UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTER DOMUS, LLC,

               Plaintiff/Counter-Defendant,        Case Number 23-10458

v.                                       Honorable David M. Lawson

LARRY J. WINGET,

               Defendant,

and

JVIS-USA, LLC,

               Defendant/Counter-Plaintiff.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

The present lawsuit metastasizes from another action pending in this Court in which plaintiff Alter Domus, an agent that represents lenders who benefit from the Larry J. Winget Living Trust's guarantee of a debt, obtained a money judgment against Larry J. Winget and the Trust. Winget and his Trust guaranteed a debt of a company that went bankrupt. Winget paid his part of the debt, but his Trust remains liable on the judgment whose growing balance approaches over $750 million. In this case, Alter Domus alleges that Winget has manipulated Trust assets to put them beyond the reach of the judgment creditor. The main focus is on certain promissory notes issued by codefendant JVIS-USA, LLC in favor of Winget and a different trust, which Winget appropriated and then returned to the Trust after altering the terms of the notes in a way that, according to Alter Domus, diminished their value. Alter Domus brings claims for unjust enrichment and under Michigan's Uniform Voidable Transactions Act (MUVTA). JVIS-USA, LLC, filed a counterclaim under Michigan's limited liability company law, arguing that the

promissory notes actually are illegal distributions.  It asks that the notes be declared void and certain payments made be returned.  Both sides have moved to dismiss the other's pleadings.  Alter Domus has pleaded sufficient facts to state plausible claims under both of its theories.  The motion to dismiss the amended complaint will be denied.  The defendants have pleaded a viable claim to declare the notes void as improper distributions, but they have not pleaded sufficient facts to support their claim for return of the payments made.  That count of the counter-complaint (Count 2) will be dismissed.

## I.

The facts of the case have been recited in several opinions filed in this undercard case and in the main-event litigation.  Most recently, they were summarized in the opinion striking JVIS's jury demand.  *See* ECF No. 84, PageID.796-800, and they need not be repeated here at length.

Because the case is at the motion to dismiss stage, the facts relevant to the present motion are taken from the amended complaint and the counterclaim.  *Savel v. The Metro Health Sys.*, --- F.4th ---, ---, No. 23-3627, at *3 (6th Cir. March 20, 2024) (citing *Gavitt v. Born*, 835 F.3d 623, 639-40 (6th Cir. 2016)).  Joining the bout in progress, Alter Domus alleges that Winget improperly terminated the Trust and divested it of all its assets.  The Trust was the sole member of defendant JVIS until 2016, when Winget improperly retitled the Trust's membership in JVIS to make himself and a new grantor retained annuity trust (the "GRAT") the members of the LLC.  Am. Compl., ¶ 15, ECF No. 46, PageID.377.  After Winget was called out on that action in court decisions, he rescinded his revocation and retitled all of the property to the Trust, including the interests in certain limited liability companies, including JVIS.

During the interregnum, however, the LLCs distributed hundreds of millions of dollars in cash and promissory notes to Winget. Am. Compl., ¶ 17, ECF No. 46, PageID.377.  Two of the

notes were made by JVIS, issued on June 29, 2017, one to the GRAT for $135 million, and one to Winget personally for $15 million. *Ibid.* The notes called for the payment of the principal balance to be made either on July 1, 2020 or upon demand by the obligee. When Winget reinstated the Trust, he did not return the promissory notes to the Trust, but rather assigned the $135 million note to himself. *Id.* at ¶ 20. However, he did retitle the LLC's membership interests to make the Trust, again, the sole member of JVIS. *Id.* at ¶ 8. *Id.* at ¶ 18, PageID.377-78.

Thereafter, the Court granted the Agent's request for charging orders directed to the LLC membership interests held by the Trust. The Sixth Circuit affirmed those orders. *See JPMorgan Chase Bank, N.A. v. Winget*, 942 F.3d 748, 750-52 (6th Cir. 2019). The Agent also sued Winget for unjust enrichment and sought a constructive trust over all of the distributions made during the period after Winget revoked the Trust but before he rescinded the revocation. The Court granted the Agent summary judgment and ordered the imposition of a constructive trust over the distributions, including the $150 million in promissory notes. It also ordered that Winget immediately assign the promissory notes to the Agent and pay to the Agent $22.5 million JVIS had paid on the notes. *JPMorgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2021 WL 37479, at *11 (E.D. Mich. Jan. 5, 2021). On June 1, 2021, the Court entered a final judgment on the fraudulent-transfer claim and the unjust-enrichment claim. *See JPMorgan Chase Bank, N.A. v. Winget*, No. 21-1568, 2022 WL 2389287, at *2 (6th Cir. July 1, 2022); *Alter Domus v. Winget*, No. 08-13845 (E.D. Mich. Jun. 1, 2021) (judgment). Winget placed the cash distributions and promissory notes in escrow while he appealed the rulings.

The Sixth Circuit affirmed the fraudulent transfer ruling and affirmed the unjust enrichment ruling it part. *Winget*, 2022 WL 2389287, at *11. It agreed that Winget's revocation of the Trust constituted a fraudulent transfer executed to put the Trust's assets beyond the reach

of the Agent, and that Winget was unjustly enriched by the LLC distributions he received during the revocation period, including the promissory notes issued by JVIS. *Id.* at *5-9. The Court found that, but for the fraudulent revocation, the Trust — not Winget — would have been the member of JVIS, and thus the Trust would have loaned JVIS cash and received the promissory notes in return. *Id.* at *7. The court concluded that the notes belonged to the Trust and were subject to the charging orders that the Court previously entered. *Ibid.*

The Agent then obtained the promissory notes from escrow, only to discover that Winget and JVIS had amended the terms of the notes on June 30, 2020. Am. Compl., ECF No. 46, ¶ 28-29, PageID.380. The changes include an extension of the notes' maturity date to July 1, 2023, the elimination of the right to annual interest payments, and the removal of the notes' pay-on-demand requirement. *Id.* at ¶ 23. The Agent responded by filing this lawsuit, which asserted a claim against Winget and JVIS under Michigan's Uniform Voidable Transfer Act. JVIS subsequently filed a counterclaim.

On July 3, 2023, two days after the amended maturity date, the Agent demanded payment of its debts under the notes and informed JVIS that a failure to pay would constitute an event of default. *Id.* at ¶ 33. JVIS acknowledged receipt of the demand but made no payment. *Id.* at ¶ 34. Therefore, on July 14, 2023, the Agent filed an amended complaint, adding a breach of contract claim against JVIS and an unjust enrichment claim against both defendants. The Agent contends that the amendments to the Notes constitute a voidable transfer because they were not disclosed and were made with actual intent to hinder, delay, or defraud the Agent while Winget was embroiled in litigation over the notes. They also allege that Winget did not receive a reasonably equivalent value in exchange for the amendments. *Id.* at ¶ 23, PageID.379.

JVIS filed a countercomplaint seeking for a declaratory judgment that the promissory

notes were unlawful distributions, and that the Agent is barred from enforcing them.   ECF No.
16.  It also alleges that it has the right to recover any payments it made on the notes, including
a $22.5 million payment now in the possession of the Agent. *Id.* ¶ 32, PageID.55.  JVIS contends
that the payment was unlawful and must be returned under Michigan Compiled Laws §§
450.4307(1) and (7).

According to JVIS's counterclaim, it supplies automobile components to equipment
manufacturers. *Id.* ¶ 6, PageID.51.  The Winget Trust holds the membership interests in JVIS.
*Id.* ¶ 7, PageID.51.  Between 2006 and 2016, JVIS needed capital to grow its business, so it
asked Winget to loan back the more than $150 million in cash distributions it previously made
to Winget as the beneficial owner of the Trust's membership interests. *Id.* ¶ 8-10, PageID.51.
JVIS memorialized the loans in the June 29, 2017 promissory notes discussed above. *Id.* ¶ 11,
PageID.52.

According to JVIS, its business ground to a halt in 2020 due to the COVID-19 pandemic,
and JVIS needed capital to preserve its operations.  It therefore asked Winget to drop the demand
features of the notes and extend the maturity date to July 1, 2023.  JVIS and Winget amended
the notes accordingly and included language indicating that the purpose of the amendments was
to preserve JVIS.

JVIS concedes that the Sixth Circuit found that the Agent was entitled to the promissory
notes under the charging orders. *See Winget*, 2022 WL 2389287, at *7; ECF No. 16, ¶ 13.
However, it construes that finding to mean that the promissory notes were not loans Winget
made to the company, but rather distributions of indebtedness by JVIS. *See* Counterclaim, ¶ 12,
ECF No. 16, PageID.52.  And it contends that said distributions violated the Michigan limited
liability law, Mich. Comp. Laws § 450.4307(1), because they made JVIS insolvent. *Id.* at ¶ 14.

Count I of the counterclaim seeks a declaratory judgment that the Agent is barred from enforcing the notes because they are unlawful distributions, and Count II seeks a judgment against the Agent for $22,500,000 for a violation of Mich. Comp. Laws § 450.4307.

## II.

Both sides invoke Federal Rule of Civil Procedure 12(b)(6) in their respective motions to dismiss. Under that rule, the Court must determine if a pleading — a complaint or a counterclaim — "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court views the pleading "in the light most favorable to the plaintiff and accept[s] all [factual] allegations as true." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). As a rule, only the pleadings are considered. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). But the Court also may consider the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort

to matters outside the pleadings.  *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)

### A.  Defendants' Motion to Dismiss the Amended Complaint

Defendants Winget and JVIS each filed motions to dismiss, but they raise largely similar arguments.  They contend that Alter Domus's MUVTA claim fails as a matter of law because Alter Domus has not pleaded facts showing that JVIS or Winget was a debtor, made a fraudulent transfer, or made that transfer with the requisite intent to defraud.  They argue that the promissory notes were not "assets," since the complaint alleges that they are "distributions" and property of the Trust — not of JVIS or Winget himself.  And they assert that Winget was not Alter Domus's debtor at the time the amendments were made.

The defendants also argue that Alter Domus has not pleaded facts with sufficient particularity under Rule 9(b) to establish actual intent to hinder, delay, or defraud its collection efforts.

### 1.  MUVTA Claim

Michigan's version of the Uniform Voidable Transfer Act allows a court to void a transfer of property or other things of value when the debtor makes the transfer with the intent to interfere with a creditor's rights in the property.  Mich. Comp. Laws 566.34(1)(a).  A court also may avoid a transfer when the debtor does not receive "a reasonably equivalent value," and transfer may render the debtor insolvent.  *Id.* 566.34(1)(b)(ii).  Courts generally agree that "the Michigan statute appl[ies] only to transfers made *by the debtor*."  *In re Silver*, 647 B.R. 897, 908 (Bankr. E.D. Mich. 2022); *see also Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 268 (6th Cir. 2021) (confirming that "[t]he statute instead presumes that 'the transferor must actually be liable for the claim'" (quoting *Mather Invs., LLC v. Larson*, 271 Mich. App. 254, 720 N.W.2d 575,

578 (2006))).   The statute defines a debtor as a "person liable on a claim."  Mich. Comp. Laws § 566.31(f).

The defendants insist that the MUTVA claim must fail because neither is a debtor of Alter Domus.  It is true that Alter Domus's primary collection effort is directed to the Winget Trust, which owes a substantial amount of money on the amended judgment that was entered in the original action.  But because Alter Domus has alleged that Winget has tampered with the Trust's assets — shutting down the Trust; transferring the assets, including the promissory notes, to himself; reinstating the trusts and restoring less than the full value of the notes to the Trust — Alter Domus has alleged that Winget himself is indebted to it.

This Court and the Sixth Circuit have held as much by imposing a constructive trust over the assets that Winget transferred to himself when he revoked the Winget Trust.  *Winget*, 2022 WL 2389287 at *4.  Alter Domus contends that Winget diminished the value of the Promissory Notes by extending the maturity date, eliminating the demand feature, and waiving defaults that would have increased the interest rates.  That occurred before the Court imposed the constructive trust.  But it does not matter when Winget's status as a debtor arose.  The MUVTA voids transfers "whether the creditor's claim arose before or after the transfer was made" as long as the transferor acted with the required mental state or did not receive reasonably equivalent value.  *See id.* § 566.34(1).  The creditor's claim need not be reduced to a judgment before the transfer is made, as long as the transferor is actually liable for the claim.  *Mather Invs., LLC v. Larson*, 271 Mich. App. 254, 259, 720 N.W.2d 575, 578 (2006).

Similarly, JVIS cannot argue plausibly that it is not liable to Alter Domus as its debtor on a right of payment.  Mich. Comp. Laws § 566.31(c), (f).  Consistent with this Court's order, Alter Domus alleges that the Notes were assigned to it.  Am. Compl. ¶ 28.   The assignment gave Alter

Domus the rights to the Notes previously held by Winget, the assignor.  Under Michigan law, a counterparty is liable to the recipient of a valid assignment.  *See Robinson v. Szczotka*, No. 359646, 2023 WL 2816798, at *3 (Mich. Ct. App. Apr. 6, 2023) ("Once a valid assignment occurs, the assignee then stands in the shoes of the assignor and may enforce the rights assigned.").   Both Winget and JVIS are "debtors" within the meaning of the MUVTA.

Even if JVIS were not a debtor, the MUVTA reaches parties in its situation.  A creditor may recover against "[t]he first transferee of the asset or the person for whose benefit the transfer was made."  Mich. Comp. Laws § 566.38(2)(a)(i).  Because the Sixth Circuit already held that Winget's revocation of the Trust amounted to a fraudulent transfer of the trust assets, *Winget*, 2022 WL 2389287, at *1, 5, JVIS may be liable as the first transferee of the benefits conferred by the amendments of the notes.  Alter Domus alleges that the amendments were not granted to JVIS for a reasonably equivalent value.  Therefore, under either theory of this transaction, Alter Domus has adequately pleaded facts to plausibly establish JVIS' liability as a debtor.

The defendants also argue that there was no "transfer" within the meaning of the statute. The amended complaint alleges sufficient facts to establish that a transfer occurred.  The MUVTA defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset."  Mich. Comp. Laws § 566.31(s).  It includes the "payment of money, release, lease, license, and creation of a lien or other encumbrance."  *Ibid.*  Relying on language from the Sixth Circuit's 2022 opinion, the defendants suggest that there had been no transfer because the notes always belonged to the Winget Trust — not to Winget himself.  *See* ECF No. 53, PageID.459; *Winget*, 2022 WL 2389287, at *7 ("[B]ut for the revocation, the Trust would have been the LLC's member and the party to whom the LLC issued the promissory notes.  So Chase [now Alter Domus] would have been entitled to

them under the charging orders.")).  But this argument misses the forest for the trees: the very language cited by the defendants emphasizes that the Trust *would have* owned the promissory notes were it not for Winget's action.  The Trust never owned the notes — Winget did.  That is why the Court imposed a constructive trust on the notes in Winget's possession and ordered him to assign them to the plaintiff.  *Winget*, 2021 WL 37479 at *11.  The Amended Complaint alleges that Winget has always owned the Notes, as they were issued while the Trust was revoked and not returned when the Trust was reinstated.  Am. Compl. ¶ 1.  And the defendants do not seem to contest that the amendments to the notes would constitute a disposal of an asset under section 566.31(s).  At the motion to dismiss stage, Alter Domus has pleaded sufficient facts to establish a transfer.

The defendants also argue that the plaintiff has not pleaded the defendants' intent to defraud with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).  That argument fails for several reasons.  First, "[i]t is not the fraudulent intent of the debtor that must be pled with particularity; rather it is the 'circumstances constituting fraud.'"  *In re NM Holdings Co., LLC*, 407 B.R. 232, 262 (Bankr. E.D. Mich. 2009).  Alter Domus properly has identified details about the amendments to the notes that constituted the alleged transfers.  *See* Am. Compl. ¶ 39 (listing the facts that must be specified when a complaint alleges fraud, including the date, amount, names, and form of consideration).

Second, a permissible way to establish a voidable transfer is to show that the transferor had an "actual intent to hinder, delay, or defraud any creditor of the debtor."  Mich. Comp. Laws § 566.34(1)(a).  The Michigan statute lists several factors that may bear on that determination, including that "[t]he transfer or obligation was to an insider," "[t]he debtor retained possession or control of the property transferred after the transfer," [t]he transfer or obligation was . . .

concealed," "[b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit," and "[t]he debtor removed or concealed assets."  Mich. Comp. Laws § 566.34(2)(a)-(d), (g).  The amended complaint specifically alleges several facts corresponding to the factors listed in § 566.34(2), including that the transfers were made to JVIS, which is an insider; that they were made while Winget was engaged in litigation; that the transfers were concealed; and that they occurred after the Special Master issued a recommendation that would prevent Winget from receiving payment on the notes.  Am. Compl. ¶ 39(d).  At the pleading stage, these facts are sufficient to allege plausibly an intent to hinder, delay, or defraud.

Likewise, the defendants' argument that the plaintiff has not satisfied Rule 9's heightened pleading requirement misunderstands the Rule's requirements.   Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  As noted above, fraud is only one possible state of mind that can trigger MUVTA liability — an intent to hinder or delay a creditor are also sufficient, and Alter Domus alleges those theories.   Am. Compl. ¶ 39.   Here, the plaintiff has properly identified details about the amendments that constituted the alleged transfers.

The explanations included in the amended notes of their purpose do little to undermine the plaintiff's allegations at the pleadings stage.  After all, a fraudulent purpose would rarely be stated openly.  And the defendants' reliance on *Swirple v. MGM Grand Detroit, LLC*, 2020 WL 561904 (Mich. Ct. App. Feb. 4, 2020), is misplaced.  In that case, the court affirmed a trial court's summary disposition for the defendant on the plaintiff's MUVTA claim, even though the plaintiff had proved several "badges of fraud," because there were no factual disputes that the defendant had taken in good faith and for reasonably equivalent value under section 566.38.  *Id.* at *4, *7.  JVIS may have

the same affirmative defense, but at the motion to dismiss stage, it would be inappropriate to dismiss Alter Domus's claim without further factual development.

Alter Domus adequately has pleaded its MUVTA claim.

### 2.   Unjust Enrichment Claim

The defendants attack the plaintiff's unjust enrichment claim by contending that Alter Domus has not pleaded sufficient facts to satisfy each of the elements.  They cite *Dumas v. Auto Club Insurance Association*, 437 Mich. 521, 546, 473 N.W.2d 652, 663 (1991), for the proposition that an unjust enrichment claim requires the "receipt of a benefit by the defendant *from the plaintiff*." Because Alter Domus never alleges that it directly conveyed a benefit to JVIS, the defendants argue the claim is fatally flawed.  Similarly, Winget maintains that Alter Domus never alleges that it conveyed a benefit directly on him.  They assert that a quasi-contract remedy like unjust enrichment is inappropriate where there was no direct interaction between the parties.

To survive a motion to dismiss an unjust enrichment claim, a plaintiff must allege facts showing "(1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit."  *Bellevue Ventures, Inc. v. Morang-Kelly Inv., Inc.*, 302 Mich. App. 59, 64, 836 N.W.2d 898, 901 (2013) (citing *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652 (1991)).  "In such instances, the law operates to imply a contract in order to prevent unjust enrichment."  *Ibid.* (citing *Martin v. East Lansing Sch. Dist.*, 193 Mich. App. 166, 177, 483 N.W.2d 656 (1992)).

The defendants contend that the amended complaint does not make out the first element for want of an allegation that Alter Domus directly conveyed a benefit on Winget or JVIS that unjustly enriched either.  JVIS argues that its benefit derived from Winget, and that there are no

allegations that Alter Domus conferred a benefit unto it.  And Winget maintains that Alter Domus fails to explain what benefit he received from the amendments.

The Sixth Circuit has already held that Winget was unjustly enriched.  In its 2022 opinion, the court recognized that Winget's actions related to the promissory notes amounted to unjust enrichment.  *See Winget*, 2022 WL 2389287, at *6 ("Retracing this chain of events makes clear that Chase satisfied the elements of unjust enrichment: (1) Winget received a benefit (distributions from the membership interests) that (2) resulted in inequity to Chase.").  The court explained that the promissory notes represented an asset realized after the amended final judgment, entitling the agent to them as the Trust's creditor.  *Id.* at *6-7.  The court observed that the only reason the Trust was not a party to the promissory notes was the fact that it did not exist at the time the notes were distributed because of Winget's fraudulent revocation of the trust.  *Ibid.*

Although this case involves the amendments to the notes, it is no great leap to say that the Sixth Circuit's reasoning still controls.  Alter Domus alleges that Winget reinstated the Trust in February of 2018 but assigned the Trust's $135 million note to himself.  Am. Compl. ¶ 20.  Then, he and JVIS amended the notes on June 30, 2020.  *Id.* ¶ 23.  The Agent was entitled to the notes as soon as the Court entered its amended judgment.  It makes no difference that Winget amended them in 2020, after he had nominally reinstated the Trust.  The complaint alleges that he had assigned the notes to himself.  The complaint also alleges that Winget benefitted from the amendments (thereby undermining Alter Domus's own possessory interest) by easing JVIS's payment terms, an entity whose upside Winget shared because of his ownership stake. Am. Compl. ¶ 41(d).  These facts are sufficient to allege liability on an unjust enrichment theory.

The defendants resist this conclusion, citing the *Dumas* case to advance a narrow view of unjust enrichment that would require the receipt of a benefit by the defendant *directly* from the

plaintiff.  *See* 437 Mich. at 546, 473 N.W.2d at 663.  More recently, however, the Michigan Supreme Court has used broader language, stating that unjust enrichment "can arise when a party 'has and retains money or benefits which in justice and equity belong to another.'"  *Wright v. Genesee Cnty.*, 504 Mich. 410, 418, 934 N.W.2d 805, 809 (2019) (quoting *McCreary v. Shields*, 333 Mich. 290, 294, 52 N.W.2d 853 (1952)).  As *Wright* and other cases demonstrate, a direct link between the defendant's benefit and the plaintiff's loss is not the most important factor.  Rather, the "critical inquiry is . . . whether the plaintiff can establish [that] the relationship between his detriment and the defendant's benefit 'flow[s] from the challenged conduct.'" *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 864 (E.D. Mich. 2014) (quoting *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000)).  This makes sense, as the primary purpose of unjust enrichment is to "correct against one party's retention of a benefit at another's expense." *Wright*, 504 Mich. at 419, 473 N.W.2d at 810.

Alter Domus has pleaded facts to establish the claim.  The amended complaint alleges that Winget benefitted because the Notes' amended terms were more favorable to JVIS, in which he had a stake.  Am. Compl. ¶ 41(d).  The plaintiff also alleges that it was due payments under the previous terms, a benefit it was denied by Winget's actions.  *Id.* ¶¶ 41(b), (e).  Similarly, Alter Domus adequately has pleaded facts to show that JVIS received a benefit from the plaintiff because it was the beneficiary of more favorable terms on an instrument in which the plaintiff had an equitable interest.  Although the amended complaint does not allege facts indicating that Alter Domus had an interest in the notes at the time of the amendments, the Court may take judicial notice of the Sixth Circuit's conclusion that "[the Agent]'s right to the LLC's distributions arose once it could obtain a charging order (i.e., when the amended final judgment issued)."  *See Winget*, 2022 WL 2389287, at *6.  The plaintiff plausibly has pleaded a claim for unjust enrichment.

The motions to dismiss the amended complaint will be denied.

B.  Plaintiff's Motion to Dismiss the Counterclaim

JVIS premises its counterclaim on a section of Michigan's limited liability company law that makes it unlawful for a company to make distributions to members that would render it insolvent.  *See* Mich. Comp. Laws § 450.4307(1).  JVIS asks for a judgment declaring that the issuance of the promissory notes amounted to such a distribution, which it should be allowed to recover.

Alter Domus argues that JVIS cannot assert a claim against it under section 450.4307 because that statute does not apply to a nonmember of the LLC, like itself as the Agent.  Rather, it may be invoked only by creditors of an LLC to recover distributions made to members that rendered the LLC insolvent.  Members of an LLC who assented to the unlawful distribution are jointly and severally liable to the LLC for those distributions.  Mich. Comp. Laws § 450.4308. Alter Domus relies on *Simon v. Gebremariam*, 2020 WL 10142203, at *4 (Mich. Ct. App. Dec. 10, 2020), where the court affirmed the dismissal of a claim brought by a creditor of an LLC against the former spouse of the LLC's sole member to recover property distributed in a divorce. Alter Domus also argues that JVIS cannot complain that there was a fraudulent transfer because the Agent took the notes in good faith under the final order of the Sixth Circuit.

Alter Domus also argues that JVIS's counterclaim is barred by the doctrine of *res judicata*. It believes that the Court's decision in the original lawsuit that the Agent was entitled to the payments from the notes constituted a final decision the merits.  It also maintains that, even though JVIS was not a party to the previous case, it was in privity to Winget because at the time of the distribution, Winget was JVIS's only equity owner and that JVIS had been on notice of the 2008

- 15 -

case because of its participation in the discovery process.  It additionally contends that the propriety of the distributions could have been litigated in the constructive trust action.

JVIS counters that Alter Domus is liable under section 450.4307 because any right it has to the notes comes from its claim against the Winget Trust, which was the member of the LLC.  It also points out that the counterclaim alleges insolvency, so it may advance a claim to recover the distributions.  JVIS also argues that *res judicata* is inapplicable because, among other reasons, JVIS and Winget are not in privity because JVIS never controlled the litigation in the previous suit and was not adequately represented in the previous litigation.  Moreover, Winget could not have asserted a section 450.4307 claim.  If he had, he would have been deprived of repayment of the notes.

*Res Judicata* is no defense to the counterclaim at this stage of the case because Alter Domus has not shown adequately that the question of the distributions' validity was or could have been raised in an earlier proceeding.  JVIS says that the Michigan version of the doctrine cited by Alter Domus should not govern, but the Sixth Circuit has held that for diversity cases federal courts should apply the version of *res judicata* in the state where the court sits unless the state rule is "incompatible with federal interests."  *Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 458 (6th Cir. 2022) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001)).  For *res judicata* in a diversity case, the Court "must . . . apply Michigan law."  *Ibid.* The differences between the Michigan and federal versions are unremarkable, however.  Both emphasize the finality of the previous litigation, whether the same parties or their privies were involved in both, and whether the issue was or could have been raised in the prior suit.  *See Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386, 396 (2004); *Becherer v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999).

JVIS takes issue with the finality and privity components of the doctrine.  The Court need not address those arguments, though, because it is clear that the alleged invalidity of the promissory notes was not raised, and could not have been raised, in the 2008 case.  The record reflects that the validity of the LLC distributions was not decided in the 2008 litigation and likely could not have been resolved in any event.  In the previous round of litigation over the promissory notes, Winget appeared in his personal capacity and argued that he personally loaned money to JVIS.  He reasoned therefore that the Trust had no right to the Notes.  *Winget*, 2022 WL 2389287, at *7.  However, the Sixth Circuit took issue with his contention, observing that the fraudulent revocation meant that the notes should have belonged to the Trust.  *Ibid.*

Winget's argument in the previous suit is at odds with JVIS's now.  In essence, Winget sought to affirm the validity of the notes and retain personal possession of them.  JVIS's contention in this case that the notes are invalid runs counter to Winget's previous position.  JVIS contends here that the notes are wholly invalid.  Although Alter Domus correctly points out that Winget, through the Trust, remains an owner of JVIS and its improved financial situation benefits him, this does not mean the argument over the notes' validity could or should have been raised previously.  If that were the case, Winget would have had to simultaneously argue that he held a valid interest in the notes *and* that the notes were improper distributions under section 450.4307.  The contortions that argument would require undercut the practicality of raising it earlier.

Notably, Winget does not join in JVIS's counterclaims here.  Moreover, it is not clear that anyone other than an LLC has standing to raise a claim that its distributions were invalid.  *See* 1 Ribstein and Keatinge on Limited Liability Companies § 7:11 (explaining that "statutes vary on whether a creditor may bring an action for wrongful distribution, or only the LLC may bring the

claim."). Because Alter Domus has not established this element of *res judicata*, the doctrine stands as no bar to the counterclaim.

Alter Domus also contends that a claim under section 450.4307 cannot apply to it because that statute does not apply to nonmembers of the LLC. That argument is somewhat circular. The parties agree, at least at this point in the long-running dispute, that the issuance of the promissory notes was a "distribution" made by an LLC within the meaning of section 450.4307. A "distribution" is defined as a "transfer of money or other property . . . by a limited liability company *to or for the benefit of its members* or assignees of its members in respect of the members' membership interests." Mich. Comp. Laws § 450.4102(g) (emphasis added). Alter Domus has maintained that the promissory notes should have been issued to the Trust, because the Trust should have been the member of the LLC. Section 450.4307 states that distributions that render an LLC insolvent (i.e., that would render "[t]he limited liability company . . . [un]able to pay its debts as they become due in the usual course of business") "shall not be made." Mich. Comp. Laws § 450.4307(1)(a). Section 450.4307 is not directed to either members or nonmembers, but rather to the distributions themselves.

In Count I of its counterclaim, JVIS seeks a declaratory judgment that the promissory notes were unlawful distributions under this statute, which would prevent Alter Domus from collecting on them. It alleges that payment of the notes would render it insolvent. ECF No. 16, ¶ 18. An action to test the validity of an LLC's distributions is the appropriate vehicle for declaratory relief when a claim is based on those distributions, as is the case here. *See* 28 U.S.C. § 2201; Mich. Comp. Laws § 450.4307(7) (noting that the invalidity of an LLC's distributions may be raised as a defense to a claim based on the distribution). JVIS has pleaded facts plausibly entitling it to declaratory relief as to the validity of the notes.

That does not answer the question on the viability of Count II of the counterclaim, however. In that count, JVIS asks for the return of $22.5 million that had been distributed to Winget and then paid to Alter Domus under the constructive trust. JVIS believes that section 450.4307(7) authorizes it to sue Alter Domus for the return of funds, but that provision furnishes no such cause of action. The text of that section states that "if a claim is made to recover a[n unlawful] distribution," "this section does not prevent the person receiving the distribution from asserting a right of recission of other legal or equitable rights." According to JVIS, the statute's reference to a "claim" implies the existence of a cause of action. In support of its view, JVIS cites *A Communication Company, Inc. v. Bonutti*, 55 F. Supp. 3d 1119 (S.D. Ill. 2014), where the court evaluated whether a statute of limitations provision in Delaware's LLC act barred all claims or just those between an LLC and its members. *Id.* at 1126-27. The court determined that the Delaware statute did not foreclose all claims, but nowhere did it indicate that the statute *created* a cause of action for the recovery of funds from non-members.

At most, this provision references the cause of action in section 450.4308, which creates personal liability for members and managers authorizing unlawful distributions. Liability under section 450.4308 runs only against "a member or a manager." Mich. Comp. Laws § 450.4308(1) ("A *member or manager* that votes for or assents to a distribution in violation of an operating agreement or section 307 is personally liable, jointly and severally, to the limited liability company for the amount of the distribution that exceeds what could have been distributed without violating the operating agreement or section 307 if it is established that the member or manager did not comply with section 404.") (emphasis added).

JVIS does not allege that Alter Domus is either a member or a manager. Nor could it. Alter Domus's interest in the distributions and the notes derive from this Court's order requiring

Winget to assign them.  Notably, JVIS does not bring a claim alleging that Alter Domus is the recipient of a fraudulent transfer.  Michigan's courts have held that its LLC statute does not create a cause of action for the return of distributions already in the possession of a third party.  *See Simon*, 2020 WL 10142203, at *4 ("We were not able to find any statute in the MLLCA, nor any caselaw, imposing liability on a nonmember of an LLC for being the recipient of an improper distribution from that LLC.").

JVIS's argument that, as a judgment creditor, Alter Domus stands in the shoes of the LLC's member is not persuasive.  JVIS cites no authority for that proposition, and it is not the best reading of the statute.  That section premises personal liability on a member or manager "that votes for or assents to" the unlawful distribution.  Mich. Comp. Laws § 450.4308(1).  The Michigan LLC law defines a member as a "person who has been admitted to a limited liability company as provided in [section 450.4501]," Mich. Comp. Laws § 450.4102(p), and a manager as "a person or persons designated to manage the limited liability company pursuant to a provision in the articles of organization stating that the business is to be managed by or under the authority of managers," Mich. Comp. Laws § 450.4102(o).  JVIS does not allege that Alter Domus is either.  Although a person may become a member as an assignee of a membership interest, *see* Mich. Comp. Laws § 450.4501(2)(b), for an LLC with one member, the assignee becomes a member only "in accordance with the terms of the agreement between the member and the assignee," *see* Mich. Comp. Laws § 450.4506.  And the statutory scheme provides explicitly that "a judgment creditor of a member that obtains a charging order *does not* become a member of the limited liability company . . . ." § 450.4507(4) (emphasis added).  JVIS alleges no facts identifying Alter Domus as a member; in fact, it alleges that the Winget Trust is its only member.  *See* ECF No. 16, ¶ 7.  Nor does it allege any conduct that resembles voting for or assenting to the distribution.

Count II of the counterclaim, therefore, does not state a viable claim against Alter Domus and must be dismissed.

III.

Defendant Larry Winget had filed a motion to dismiss the original complaint (ECF No. 17), which was rendered moot by the filing of the amended complaint.  Alter Domus has pleaded viable claims under the Michigan's Uniform Voidable Transactions Act and for unjust enrichment in its amended complaint.  Counter-defendant JVIS states a viable claim for declaratory relief in its counterclaim, but its claim for return of distributions against a nonmember and nonmanager finds no support in Michigan Law.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss the amended complaint (ECF Nos. 52, 53) are **DENIED**.

It is further **ORDERED** that the plaintiff's motion to dismiss the counterclaim (ECF No. 27) is **GRANTED IN PART AND DENIED IN PART**.  Count II of the counterclaim is **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** in all other respects.

It is further **ORDERED** that defendant Larry J. Winget's motion to dismiss the complaint (ECF No. 17) is **DENIED as moot**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:  March 26, 2024