UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTER DOMUS, LLC,

               Plaintiff/Counter-Defendant,                     Case Number 23-10458

v.                                                          Honorable David M. Lawson

LARRY J. WINGET and JVIS-USA, LLC,

               Defendants/Counter-Plaintiffs,
_____/

## OPINION AND ORDER OVERRULING OBJECTIONS
## TO MAGISTRATE JUDGE'S DISCOVERY ORDER

Defendants JVIS-USA, LLC and Larry J. Winget jointly appeal Magistrate Judge David R. Grand's July 11, 2024 ruling on the plaintiff's motion to compel production of a valuation report and to remove an "attorney's eyes only" designation from an expert witness report. They also seek a partial stay of the order while this Court considers their appeal.

The present lawsuit is ancillary to a case filed in 2008 in this Court to enforce a guarantee of a corporate loan to an entity that went bankrupt. The plaintiff — the Agent for a consortium of lenders — obtained a substantial judgment in that case against Larry Winget and his trust. Among the trust's assets are promissory notes that JVIS issued to Winget and a related entity, which have been assigned to the plaintiff as part of its collection effort. The defendants maintain that JVIS was insolvent when it issued the notes, which would invalidate them as an unlawful distribution under Michigan's limited liability company law. Judge Grand issued an order compelling the defendants to produce a report assessing defendant JVIS' value; he also ordered the removal of the "attorney eyes only designation" from a December 19, 2023 expert witness report prepared by Gregory Light (the "Light Report") for the defendants.

None of the defendants' arguments point to a clear error in Judge Grand's decision to compel the production of the valuation report, and they have not established that there is any acceptable rationale to disagree with Judge Grand's ruling on the Light Report.  The Court will overrule the objection to the magistrate judge's order and deny the motion to stay enforcement of the magistrate judge's ruling as moot.

I.

As the parties well know, this case involves the Agent's claim that certain promissory notes issued by JVIS — which the Agent obtained as part of its ongoing collections action against the Larry J. Winget Trust (*Alter Domus, LLC v. Winget*, No. 08-13845 (E.D. Mich.)) — were secretly modified by defendant Winget and now are past due.  JVIS also has filed a counterclaim seeking to invalidate the notes and to recoup the funds it has paid on them already, arguing that the notes were unlawful distributions under Michigan's limited liability company statute.

A.

The present dispute arises from the parties' discovery efforts into JVIS's financial condition on the date it issued the notes, a key question for JVIS's contention that it was insolvent when it issued the notes in 2017.  First, the Agent seeks to compel the production of a report titled "Valuation and Appraisal of 90 Class B Non-Voting Units in JVIS-USA, LLC," dated May 17, 2017.  In its briefs, it refers to this document as the Rehmann Report.  The defendants frequently refer to the document as the "Semro Report."  ECF No. 157, PageID.2194.  Judge Grand chose to call the document the "JVIS Valuation Report," a designation that the Court will adopt.

The JVIS Valuation Report was prepared by Rehmann Consulting, a Michigan-based consulting firm specializing in appraisals, for Timothy Semro, an attorney retained by defendant Winget.  The Report's attached cover letter indicates that it was intended for Winget's "tax

- 2 -

planning purposes."   JVIS Valuation Report, ECF No. 120-4, PageID.1536.   Although the

document is dated May 17, 2017, Rehmann sought to assess the fair market value of 90 class-B

non-voting units in JVIS as of July 1, 2016.  *Ibid.*  This task necessarily involved an attempt to

value JVIS itself, and Rehmann estimated that JVIS's value exceeded $400 million on that date.

*Id.* at PageID.1570.

In late 2017, Winget produced the Report to the Agent in the original lawsuit, but the

defendants here say that he only did so as part of the parties' attempts at mediating that case.

Before those negotiations, the parties stipulated to the entry of two protective orders.  The first

stipulation resulted in a "Stipulated Amended Protective Order" that the Court entered on August

31, 2017.  The parties presently dispute the interpretation of paragraph 17 of that order, which

states:

### Inadvertent Production of Privileged Materials

17. The production of any Litigation Material, in itself and without more, does not
constitute a waiver of the attorney client privilege, the attorney work product
doctrine, or any other privilege or claim of confidentiality that may attach to the
document, data, metadata or information. Federal Rule of Civil Procedure
26(b)(5)(B) and Federal Rule of Evidence 502 govern any production of Litigation
Material that is subject to any claim of attorney client privilege, constitutes work
product created in anticipation of litigation, or is subject to any other privilege. The
return, sequestration or destruction of any document, data, metadata or information
in accordance with Federal Rule of Civil Procedure 26(b)(5)(B) shall not constitute
an admission or concession, or permit any inference, that the document or
information is, in fact, properly subject to a claim of privilege, nor shall it foreclose
any party from moving the Court for an order that such Litigation Material has been
improperly designated as privileged or should be produced for reasons other than a
waiver caused by the inadvertent production.

ECF No. 749, PageID.26585.  On November 14, 2017, the Court entered a "Stipulated Addendum

to the Amended Protective Order."  That order's precatory language states, in part, that Winget

and the Agent "agree that expansion of the Amended Protective Order to include materials

disclosed outside of discovery and the addition of an "Attorney Eyes Only" designation will

facilitate mediation efforts . . . ."  ECF No. 759, PageID.26777.  The parties also dispute the scope

of paragraph 10, which states:

> 10. All persons authorized to use Attorney Eyes Only Material shall maintain the confidentiality of such material in accordance with its terms, and shall use such material solely for the purpose of preparing for and conducting the above-captioned action.  In this regard, the parties agree that the valuation analysis based upon Attorney Eyes Only Material, but not the materials themselves, including but not limited to the customer information contained therein, may be shared with the lending group represented by the Agent in this litigation.  No party or person receiving any Attorney Eyes Only Material shall use such material or the contents thereof for any other litigation or arbitration purposes, or for any other business, commercial, or competitive purposes.

*Id.* at PageID.26780.

The settlement negotiations reached an impasse, and the Agent's efforts to collect on its

judgment have continued, which include the present case.  The Agent served its Rule 34 requests

— undoubtedly aware of the JVIS Valuation Report's existence — seeking "[a]ny valuation

analyses and/or appraisals of JVIS and the corresponding valuation and/or appraisal reports."  ECF

No. 72-2, PageID.709.  JVIS objected to the request on the ground that it sought irrelevant

information but asserted that no such responsive documents existed.  ECF No. 74-2, PageID.744.

Winget lodged a similar objection, indicating that any such documents "were not in his custody or

control."  ECF No. 72-2, PageID.709.

The second document at issue in this motion is the December 19, 2023 expert witness

report of Gregory Light.  That document, which spans 57 pages and was prepared by appraiser

Gregory Light for the defendants, purports to analyze whether JVIS was solvent as of June 29,

2017, the date it issued the disputed promissory notes.  Light concluded that as of the valuation

date, JVIS's liabilities exceeded its assets by nearly $12 million, ECF No. 120-3, PageID.1478,

tending to support JVIS's principal defense and counterclaim in this matter. The defendants

produced the report to counsel for the Agent under an Attorney Eyes Only designation.

The Agent's motion to compel seeks an order directing the defendants to produce the JVIS Valuation Report and an order removing the Attorney Eyes Only designation from the Light Report. The Court referred the motion to Magistrate Judge David R. Grand, who held a hearing on June 13, 2024. Judge Grand's order grants both aspects of the Agent's motion. The defendants appealed that decision and moved to stay the magistrate judge's ruling on the Light Report pending appeal.

B.

In his thorough opinion on the Agent's motion to compel, Magistrate Judge Grand first held that the plaintiff was entitled to access the JVIS Valuation Report in this case. He explained that the report, valuing JVIS as of July 2016, contained information directly relevant to JVIS's contention that it was insolvent at the time the notes were distributed in 2017. The protective order in the 2008 case, which forbad the Agent from using the Report in other litigation, was no obstacle because he found the cases to be one in the same. Judge Grand also rejected JVIS's argument that it did not have custody of the Report, observing that Winget turned over a copy of it in the 2008 action bearing a JVIS Bates label, it was used in depositions in the 2008 case, it was based on JVIS's purportedly confidential financial information, and its opening letter indicates that JVIS was one of the Report's intended users. He proceeded to rule that any privilege asserted over the Report had been waived by Winget's production in the 2008 action and that the applicable protective order in the 2008 case did not reserve a privilege for this intentional disclosure.

Judge Grand determined that the defendants had not met their burden of establishing that the Light Report merited "attorney eyes only" designation. He explained that the defendants' contention that the report contained highly sensitive financial data was not a "fair characterization" of its contents. ECF No. 157, PageID.2202. Instead, he found that the document contained JVIS's

- 5 -

competitors' financial information and JVIS's old balance sheets, which disclosed its financial condition only at the highest levels of generality.  He also rejected as unhelpful a declaration submitted by JVIS manager Nicholas R. DeMiro in support of the document's sensitivity because the declaration lacked detail and did not describe how one could obtain sensitive information by reviewing the Report's contents.

II.

The defendants lodge three objections to the magistrate judge's conclusions about the JVIS Valuation Report and one objection on the "attorney's eyes only" determination for the Light Report.

The district judge's review of a magistrate judge's orders on discovery motions is deferential.  Under 28 U.S.C. § 636(b)(1), a magistrate judge has the authority "to hear and determine any pretrial matter pending before the court," with the exception of certain dispositive motions. 28 U.S.C. § 636(b)(1)(A). A party aggrieved by a magistrate judge's order may file objections to it within two weeks. Fed. R. Civ. P. 72(a). Upon receiving objections, the Court reviews an order by a magistrate judge on a nondispositive matter to determine whether the decision is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a) (stating that upon receipt of timely objections, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law"); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).  A decision is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948), or where the magistrate judge improperly applies the law or employs an erroneous legal standard, *Beck v. Haik*, 377 F.3d

624, 636 (6th Cir. 2004). Where there are two plausible views, a decision cannot be "clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 573-74 (1985).

A.

1.

The defendants contend first that paragraph 10 of the Stipulated Addendum to the Amended Protective Order in the 2008 case (ECF No. 759) prohibits the Agent from using the JVIS Valuation Report in the present action because it forbids the use of discovery materials "for any other litigation . . . purposes." ECF No. 759, PageID.26780. Judge Grand acknowledged this argument but rejected it because "for all practical purposes, this action and the 2008 Action are one and the same, and instead of commencing this action, the Agent could have moved in the 2008 Action to join JVIS as a party, or the Agent could move to consolidate the two actions." ECF No. 157, PageID.2196.

This reasoning, although persuasive, did not fully address the issue because, read in context, the protective order plausibly could be understood to restrict the use of the JVIS Valuation Report to the 2017 facilitative mediation. *See* ECF No. 759, PageID.26777 (stating that the addendum to the protective order was intended to facilitate mediation efforts). Even so, Judge Grand correctly observed that the Agent could obtain and use the JVIS Valuation Report through other avenues. ECF No. 157, PageID.2197. It now has attempted to do so through its discovery requests in this matter. *See id.* at PageID.2189. Regardless of whether the Agent's mere knowledge of the Report amounts to "use [of] such material or the contents thereof for any other litigation . . . purposes," ECF No. 759, PageID.26780, the Report is in the defendants' custody, and it impacts a key issue in the case: it "is relevant to [the defendants'] claim," Fed. R. Civ. P. 26(b)(1), that JVIS was insolvent at a point in time, since it "at least [is] a step on one evidentiary

route to the ultimate fact," *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020) (citations and quotations omitted).

The Report is a responsive document to the Agent's Rule 34 requests.  The defendants' failure to disclose it cannot be justified by this argument.

2.

The defendants challenge the determination that the Report is relevant to an issue in this case because the Agent's discovery request sought information from a date commencing March 29, 2017, while the Report assessed JVIS's value as of July 1, 2016, and the JVIS Valuation Report used a discounted cash flow methodology, which does not calculate the fair value of a company's assets and therefore says little about a company's solvency.

The first argument — the responsiveness of the Report relative to the timeframe of the request — does not add up since the defendants do not point to the portion of the record limiting the timeframe of the Agent's discovery request (other than a statement by JVIS's attorney at oral argument before the magistrate judge).  Even assuming March 29, 2017 was the operative date, the Agent's request was broad, seeking "[a]ny valuation analyses and/or appraisals of JVIS and the corresponding valuation and/or appraisal reports."  ECF No. 74-2, PageID.744.  The Agent also sought "[a]ny and all documents and communications related to any representations concerning the value of JVIS, including but not limited to information prepared for and provided to potential buyers of, lenders to, or investors in JVIS and/or its affiliated entities." *Ibid.*  Although the Report assessed JVIS's value as of July 2016, it was dated May 17, 2017 and therefore fell within the spirit, if not the scope, of the Agent's document requests.  ECF No. 157, PageID.2191.  At oral argument, Judge Grand pointed out that the Agent could easily amend its discovery request, so the defendants' time-based arguments against relevance elevated "form over substance."  ECF

No. 136, PageID.1852.  The defendants' present appeal does little more than continue this failed line of argument — the Report's conclusions about JVIS's finances in 2016 clearly have some bearing on its later financial health when the notes were issued.

The second part of this objection is directed to the Report's relevance based on the analytical methodology that Rehmann Consulting used to determine JVIS's value.  The defendants contend that Rehmann used a discounted cash flow analysis to determine JVIS's value and did not calculate whether the value of its assets exceeded that of its liabilities.  The defendants did not present this argument to the magistrate judge, and therefore it is not properly before the Court.  *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (explaining that the Magistrate Judges Act does not permit "parties to raise at the district court stage new arguments or issues that were not presented to the magistrate").  Even if the argument should be considered, the defendants confound the question of the propriety of the analysis with the Report's discoverability.  For instance, the defendants cite *In re LATAM Airlines Group S.A.*, No. 20-11254, 2022 WL 2206829 (Bankr. S.D.N.Y. June 18, 2022), which offers one definition of insolvency and takes issue with an expert's use of a discounted cash flow methodology.  *See id.* at *12-13.  No party has yet briefed whether the same definition controls for purposes of Michigan's LLC statute.  Mich. Comp. Laws §§ 450.4307(1)-(2).  But the report is 62 pages long and is replete with information about JVIS's financial condition in 2016.  Aspects of the document are doubtless useful for purposes beyond its conclusion regarding JVIS's value.  The only question presently before the Court is whether the Agent is entitled to access the document in discovery, a distinct query from the ultimate admissibility of certain facts and conclusions.

3.

Finally, the defendants take issue with the magistrate judge's conclusion that Winget waived his privileges covering the JVIS Valuation Report by providing it to the Agent in the 2008 case, emphasizing that the language of the Amended Protective Order (ECF No. 749) is broad enough to encompass this intentional disclosure. They believe that when Winget produced the JVIS Valuation Report in the 2008 case, he did so under the auspices of a protective order that preserved his privileges. The defendants' argument hinges on paragraph 17 of the August 2017 Amended Protective Order, which they contend Judge Grand read incorrectly to mean that it protected only against the *inadvertent* production of privileged materials.

They cite several textual bases for their view that the language preserved evidentiary privileges even from intentional disclosures. They point to the opening sentence of the paragraph, which states that the production of Attorney Eyes Only materials (like the JVIS Valuation Report) "in itself and without more, does not constitute a waiver of the attorney client privilege, the attorney work product doctrine, or any other privilege," without language distinguishing between intentional and inadvertent disclosures. ECF No. 749, PageID.26585. They argue that the paragraph's second sentence cites Federal Rule of Evidence 502 generally, not to the subsection governing inadvertent production. And they state that the paragraph's final sentence details how inadvertent disclosures should be dealt with, further emphasizing that the proceeding portions of the paragraph were intended to apply both to intentional and unintentional disclosures.

There are several problems with the defendants' position here. For one, the key paragraph must be interpreted in light of its "Inadvertent Production" header. Also, the second sentence refers also to Rule 26(b)(5)(B) (governing protective orders), which deals with the return of *inadvertently* produced information, and the paragraph's remaining sentences discuss how a party

can seek an order requiring that the material "be produced for reasons other than a waiver caused by the inadvertent production," suggesting the entire paragraph concerns inadvertent production. The order itself is based on a stipulation — an agreement — that is interpreted as a contract.  The defendants' argument flies in the face of the postulate that "courts must [ ] give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins. Grp. Agency, Inc*., 468 Mich. 459, 468, 663 N.W.2d 447, 453 (2003); *cf. RTC Indus., Inc. v. Fasteners for Retail, Inc.*, No. 17-3595, 2020 WL 1148813, at *8 (N.D. Ill. Mar. 9, 2020) (rejecting a party's argument that a protective order covered intentional disclosures where the protective order's title indicated it applied to inadvertent disclosures).  Moreover, many courts have expressed skepticism that they are empowered to enter and enforce orders permitting parties to limit the effect of *intentional*, as opposed to inadvertent, disclosures of privileged materials under Evidence Rule 502(d).  *See Lubrizol Corp. v. Int'l Bus. Machines Corp.*, No. 21-00870, 2024 WL 941686, at *3 (N.D. Ohio Feb. 8, 2024); *XY, LLC v. Trans Ova Genetics, Lc*, No. 17-00944, 2018 WL 11000694, at *6 (D. Colo. May 14, 2018); *Smith v. Best Buy Stores, L.P.*, No. 16-00296, 2017 WL 3484158, at *4 (D. Idaho Aug. 14, 2017).  That provision authorizes courts to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding."  Fed. R. Evid. 502(d).  Those courts cite several reasons in support of their view that Rule 502(d) does not endorse court-ordered protections for information disclosed intentionally, including the fact that the Advisory Committee and Congress declared that Rule 502 does not alter any existing privilege doctrines, a rejection by the drafters of a provision regarding selective waiver, and concerns about the tactical use of such provisions in the litigation process.  *XY*, 2018 WL 11000694 at *4-7; *Smith*, 2017 WL 3484158, at *3-4.  The

hazy boundaries of the Court's authority to have entered an order preserving privilege over intentional disclosures strongly supports the magistrate judge's narrow interpretation of paragraph 17.

Another fundamental problem with the defendants' objection is whether there was any applicable evidentiary privilege to the JVIS Valuation Report to begin with. The two that come to mind might be the accountant-client privilege or the attorney-client privilege invoked by Winget. Judge Grand appropriately expressed incredulity at the breadth of Michigan's accountant-client privilege posited by the defendants. *See* ECF No. 157, PageID.2197 n.9 (referencing Mich. Comp. Laws § 339.732(1)). He concluded that the purpose of that privilege "'is to protect from disclosure the substance of the information *conveyed by the client to the accountant*'" and not the other way around. *Ibid.* (quoting *In re Clements Mfg. Liquidation Co., LLC*, 486 B.R. 400, 403 (Bankr. E.D. Mich. 2012)).

The Court agrees. Michigan courts considering the issue have emphasized that "[b]ecause this accountant-client privilege is in derogation of the common law, it is strictly construed, and the scope of the privilege is subject to a number of limitations and restrictions." *People v. Simon*, 174 Mich. App. 649, 658, 436 N.W.2d 695, 699 (1989). Those courts have held that the privilege "protects only the substance of confidential information communicated by the client to the accountant." *Clements Mfg.*, 486 B.R. at 403-04. *Clements*, which is cited by both sides, represents the most thorough review of the privilege and includes an analysis of the decisions of the Michigan Court of Appeals. Although that court acknowledged that the plain language of the statute itself could support a broader reading of the privilege, it concluded that such an interpretation was foreclosed by precedent. *Id.* at 404; *accord Cawley v. Eastman Outdoors, Inc.*,

No. 14-00310, 2014 WL 4656381, at *4 (N.D. Ohio Sept. 16, 2014) (applying the Michigan statute).  The defendants offer no good reason to depart from the Michigan caselaw on the issue.

And although Judge Grand did not offer his views of whether the attorney-client privilege would be applicable, the record is sufficient to conclude that it would not protect the JVIS Valuation Report.  "In Michigan, '[t]he attorney-client privilege attaches to communications made by a client to an attorney acting as a legal adviser and made for the purpose of obtaining legal advice.'"  *Stavale v. Stavale*, 332 Mich. App. 556, 560, 957 N.W.2d 387, 389-90 (2020) (quoting *Nash Estate v. Grand Haven*, 321 Mich. App. 587, 592, 909 N.W.2d 862 (2017)).  The client's communications must have been in confidence.  *See Augustine v. Allstate Ins. Co.,* 292 Mich. App. 408, 420, 807 N.W.2d 77, 85 (2011).  And "'[o]nce otherwise privileged information is disclosed to a third party by the person who holds the privilege, or if an otherwise confidential communication is necessarily intended to be disclosed to a third party, the privilege disappears.'"  *Leibel v. Gen. Motors Corp.*, 250 Mich. App. 229, 242, 646 N.W.2d 179, 186-87 (2002) (quoting *Oakland Co. Prosecutor v. Dep't of Corr.*, 222 Mich. App. 654, 658, 564 N.W.2d 922 (1997)).

Winget argued before Judge Grand that the JVIS Valuation Report was protected by the attorney-client privilege because it was prepared by his attorney's agent to further his own "tax planning purposes."  ECF No. 72, PageID.696.  Such circumstances might support an assertion of the attorney-client privilege.  *See People v. Marcy*, 91 Mich. App. 399, 406, 283 N.W.2d 754, 757 (1979) ("Although decisions vary from one jurisdiction to another, the attorney-client privilege has been extended to cover, Inter alia, an accountant, investigator, engineer or appraiser employed by either the client or the attorney to assist the attorney. . . .").  But this assertion of privilege is undermined by the Report itself, which states that its intended users are attorney Semro, "JVIS and its members, its representatives, and any government agencies to whom reporting may be

- 13 -

required."  ECF No. 120-4, PageID.1538.  This language confirms that Rehmann Consulting was not acting as an agent in furtherance of a confidential attorney-client relationship, and the document necessarily was intended to be disclosed, disqualifying any privilege.

Judge Grand's order compelling production of the JVIS Valuation Report is not clearly erroneous.  The defendants' objections to that part of the order are unconvincing and will be overruled.

B.

The defendants also appeal the portion of Magistrate Judge Grand's ruling removing the "attorney eyes only" designation from the Light Report.  The defendants have not established, however, that the information contained in the Light Report is so sensitive that the magistrate judge clearly erred in removing that designation.

The defendants primarily argue that the magistrate judge failed to consider statements contained in a declaration submitted by JVIS manager Nicholas R. DeMiro "based on applicable law and substituted [his] own judgment as to what could be gleaned from JVIS'[s] financial data (which the Order also incorrectly describes)."  ECF No. 163, PageID.2342.

It is not clear what "applicable law" the defendants believe that the magistrate judge failed to apply.  Certainly, under Federal Rule of Civil Procedure 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Among the protections available, the Court may require "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).  Many protective orders, including the one in this case (ECF No. 65), provide a procedure for parties to designate documents with a restrictive

"attorney eyes only" designation.  Courts have explained that this designation "'is considered to be the most restrictive (and thus least often justified)' protective order." *Encompass Pet Grp., LLC v. Allstar Prod. Grp., LLC*, No. 21-12884, 2023 WL 181087, at *4 (E.D. Mich. Jan. 13, 2023) (quoting *Specialty Auto Parts USA, Inc. v. Holley Performance Prod., Inc.*, No. 17-00147, 2020 WL 1914817, at *8 (W.D. Ky. Apr. 20, 2020)).  Therefore, "[t]he party moving for a restrictive [attorney eyes only] designation must detail the alleged harm it is likely to suffer absent the requested protection 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Xoran Holdings, LLC v. Luick*, No. 16-13703, 2019 WL 13029920, at *4 (E.D. Mich. May 19, 2019) (quoting *Nemir v. Mitsubishi Motors, Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)).

Judge Grand recognized these basic rules and determined that neither the Light Report nor the data contained in it were sufficiently sensitive to warrant the restrictive designation.  ECF No. 157, PageID.2201-02.  The defendants argue that the magistrate judge "substituted" his own judgment about the sensitivity of the information by failing to credit the declaration of Nicholas DeMiro, a manager at JVIS.  That is a curious argument.  Magistrate Judge Grand was the judicial officer explicitly tasked with weighing the parties' submissions in this matter, and Mr. DeMiro's submission was either persuasive to him or it was not.  Judge Grand reviewed the declaration and stated that it lacked sufficient detail to support a finding that disclosure of the Light Report would harm JVIS.  Notably, he explained that Mr. DeMiro's declaration failed to elucidate how JVIS's proprietary pricing methodology could be gleaned from the Light Report.  ECF No. 157, PageID.2202-03.  The defendants' objection to this reasoning is unhelpful and relies principally on the misbegotten belief that the declaration speaks for itself.  It does not.

The declaration is short and unilluminating.  It asserts that "JVIS'[s] proprietary pricing methodology is in its financial reporting," and it contains the conclusory statements that "[k]eeping its proprietary pricing methodology in its financial reporting confidential is crucial to competing for OEM 'automotive program' business," and that "JVIS financial reporting going back to 2010 would disclose its proprietary pricing methodology and if revealed would be competitively harmful."  Decl. of Nicholas R. DeMiro, ECF No. 72-3, PageID.715-16.  All that can readily be discerned from the declaration is that unspecified "JVIS financial reporting" could, in an unspecified manner, reveal "proprietary pricing methodology," which if disclosed, could harm JVIS in an unspecified manner.  DeMiro states that JVIS's "proprietary pricing methodology is in its financial reporting," but he does not elucidate further.  The defendants suggest that DeMiro would have had to reveal sensitive information to articulate fully JVIS's concerns, but that argument is unhelpful for a couple of reasons.  For one, DeMiro never made such a representation in his declaration.  Perhaps more fundamentally, however, this argument neglects the basic proposition that a court is to decide disputes based on the record before it — not the record a party wishes it had produced.   Magistrate Judge Grand's decision to discount this declaration for its lack of specificity is worthy of deference.

The closest the defendants come to a well-articulated justification for the "attorney eyes only" designation is their contention that the trial balances and income statements attached to the Report could be used to determine the "costing that goes into JVIS production and sale," ECF No. 168, PageID.2487, but Judge Grand did not see how this could be so, observing that the Report "does not delineate sales by specific product lines" and "does [not] delineate product-specific costs or profit margins." ECF No. 157, PageID.2203.  When Judge Grand asked defense counsel during oral argument to point to portions of the Light Report containing those details, counsel conceded

that the report did not contain JVIS's costs for specific automotive parts.  *See* ECF No. 136, PageID.1879.  Defense counsel also repeatedly has referenced "line item by line item data on all costing that goes into JVIS's production and sale of its unique product lines to the automotive industry," ECF No. 168, PageID.2487, but they never highlight where in the Report the line items of concern appear.

Even if the defendants' concern is the possibility that this sensitive information could be derived from the attachments to the Light Report, neither the defendants' appeal nor their motion to stay the magistrate judge's order ever attempts to explain how one would ascertain this information.  The absence of any such explanation leads one to conclude the defendants' fear is more speculative than legitimate.  And even if this information somehow were calculable, the defendants never have developed an argument for why any such line items remain commercially sensitive so many years after the fact.  After all, Light developed his expert opinions on JVIS's value based on its nearly seven-year-old income statements and balance sheets.  Why those figures pose *present* harm is not clear, particularly since that data would reflect the distinct economic conditions of the late 2010s.

The defendants also argue that Judge Grand's ruling is inconsistent with a prior decision where he upheld "attorney eyes only" designations.  This is not a compelling argument.  The case cited by the defendants, *Sawicki v. Resolute Industrial, LLC*, No. 22-10648, 2022 WL 16925957 (E.D. Mich. Nov. 14, 2022), involved a dispute between a salesman and his former employer regarding a non-compete agreement.  *Sawicki*, 2022 WL 16925957, at *1.  One of the former employer's claims was that the employee passed confidential information to his new employer, which enabled it to start a competing business venture.  *Ibid.*  The new employer sought a protective order that would prohibit the competitor's executives from reviewing documents

produced during discovery containing sensitive financial, compensation, and sales information. *Ibid.* Judge Grand conducted a thorough, *in camera* review of the disputed documents and determined that certain portions merited an "attorney eyes only" designation. For instance, he found that financial information reflected in a job offer letter, which included compensation details and information about the number of vacation days provided, could be "used by a competitor to attempt to offer more lucrative compensation to potential employees." *Id.* at *2. Likewise, he found that an email containing the formulas used to calculate sales commissions merited protection. Judge Grand rejected the designation for other documents did not contain any sensitive information. *Id.* at *3.

The defendants analogize the information in the Light Report to the documents in *Sawicki*, suggesting that JVIS would be harmed if the financial data contained in the Light Report were made available to its competitors and customers. The analogy does not hold up. Notably, Judge Grand's *Sawicki* ruling explicitly limited the "attorney eyes only" designation to certain specific financial information in the documents, namely compensation data that clearly could pose competitive harm in a sales-based business. In contrast, the defendants here seek to restrict access to the *entire* Light Report without pointing to any specific sensitive information. Accepting that the automotive supply business is highly competitive, Judge Grand appears to have been willing to countenance the possibility that an "attorney eyes only" designation for information such as product-specific costs or profit margins would be appropriate here, but he found that no such information appeared in the document. ECF No. 157, PageID.2203. The defendants' general and vague pronouncements do not support an argument that the magistrate judge clearly erred.

Finally, the defendants offer their concern about the information being misused by JVIS's competitors in whom the Agent's clients may have a stake. The Agent has represented that no

members of its litigation steering group are JVIS's direct competitors. The Court takes the Agent's representation at its word and will limit access to the Light Report to the litigation steering group. The "attorney eyes only" designation, however, will be stricken.

III.

The defendants also moved for a stay of the ruling on the Light report pending this appeal. That is because the filing of objections does not stay the force of the magistrate judge's order, which "remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge." E.D. Mich. LR 72.2.

Because the defendants' objections to Judge Grand's order are overruled, the request for a stay becomes moot.

IV.

Magistrate Judge Grand thoroughly reviewed the parties' arguments, the record of proceedings, and the contested documents. His conclusions that the defendants had waived any applicable privileges over the JVIS Valuation Report by disclosing its existence during the 2008 litigation, that disclosure of the document was not barred by the 2008 protective order, and that the Report is relevant to the case are not clearly erroneous. Likewise, Judge Grand's determination that the Light Report did not contain information so sensitive as to merit "attorney eyes only" treatment is not clearly erroneous.

Accordingly, it is **ORDERED** that the defendants' objections to the magistrate judge's discovery order (ECF No. 163) are **OVERRULED**.

It is further **ORDERED** that access to the expert witness report prepared by Gregory Light is **LIMITED** to the plaintiff's litigation steering group.

It is further **ORDERED** that the defendants' motion to partially stay the enforcement of

the magistrate judge's order (ECF No. 168) is **DENIED as moot**.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   October 22, 2024