UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTER DOMUS, LLC,

               Plaintiff/Counter-Defendant,            Case Number 23-10458

v.                                                    Honorable David M. Lawson

LARRY J. WINGET and JVIS-USA, LLC,

               Defendants/Counter-Plaintiffs,

_____/

**OPINION AND ORDER DENYING MOTIONS BY DEFENDANT JVIS
TO AMEND COUNTERCLAIM AND FOR PARTIAL JUDGMENT
ON THE PLEADINGS, AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This lawsuit, which derives from a related matter in which plaintiff Alter Domus, an agent for a consortium of lenders, seeks to collect a substantial judgment, has been brought to enforce its interest in certain promissory notes issued by defendant JVIS-USA, LLC, which the Court ordered defendant Larry J. Winget to assign to the plaintiff and which are now past due. Alter Domus alleges that Winget amended the terms of the notes while they were in his possession and brings claims for breach of contract, fraudulent transfer, and unjust enrichment. In response, JVIS filed counterclaims asserting that the notes were unlawful distributions and that it is entitled to cancel the notes and recover the payments on them now in the possession of Alter Domus. The motion practice in this case has been robust. Now before the Court is a motion by defendant JVIS for a partial judgment on the pleadings that would result in a dismissal of the plaintiff's breach of contract claim based on the promissory notes in default on the theory that the Michigan limited liability company law should render the notes invalid. JVIS also filed a motion to amend its counterclaim to add a claim for unjust enrichment. The plaintiff moves for partial summary judgment of liability on the unpaid balances of the promissory notes. The Court heard the parties'

arguments on the defendant's motions in open court on June 13, 2024, and oral argument on the plaintiff's motion was heard on September 11, 2024. Because the method by which Alter Domus came to be the holder of the notes suggests that the Michigan LLC Act's typical limitations on remedies available to an LLC's member's judgment creditors pose no barrier, the motion for judgment on the pleadings will be denied. JVIS has not shown good cause to enlarge the pleading amendment deadline; motion to amend the counterclaim will be denied. Because JVIS has a viable affirmative defense to the notes that is based on factual disputes, the motion for partial summary judgment will be denied as well.

I.

Through a series of court orders, plaintiff Agent became the holder of certain promissory notes originally issued by JVIS to defendant Larry Winget, who loaned money to JVIS, presumably for operating capital. Winget was the sole member of JVIS at the time, although he arrived at that status improperly. More on that below. In the related lawsuit, the notes have been determined to be assets of the Winget Trust, a judgment debtor, and available to satisfy the judgment.

Under Michigan law, a limited liability company is prohibited from making distributions to members if the company is insolvent or the distribution would make it so. Mich. Comp. Laws § 450.4307(1). The Agent seeks to enforce the notes, which are in default. JVIS maintains that the notes constituted distributions at a time when it was insolvent. JVIS also contends that any payments on the notes likewise would be unlawful distributions. And it reasons that as a judgment creditor, the Agent stands in the shoes of the LLC member and is subject to all the limitations on distributions to members, and it is bound by certain exclusive remedy provisions of Michigan law that govern a judgment creditor's rights against an LLC member's interest in the company. That

- 2 -

is the crux of JVIS's defense and counterclaim, which seeks to cancel the notes, recover payments made, and quash any payments due.

The facts underlying this legal contest are complex, as the parties well know.  But to address these pending motions properly, a recitation of those facts as taken from the pleadings is necessary.

The present case is an outgrowth of a matter filed in this court in 2008 to enforce a loan guarantee made by Larry J. Winget, and the Winget Trust.  In the previous case, the Agent, which holds a substantial judgment against the Trust, alleged that Winget improperly terminated the Trust and divested it of all its assets.  The Trust was the sole member of defendant JVIS until 2016, when Winget improperly retitled the Trust's membership in JVIS to make himself and a new grantor retained annuity trust (the "GRAT") the members of the LLC.  Am. Compl. ¶ 15, ECF No. 46, PageID.377.  After Winget was called out on that action in court decisions, he rescinded his revocation and retitled all of the property to the Trust, including the interests in certain limited liability companies, such as JVIS.

During the interregnum, however, the LLCs distributed hundreds of millions of dollars in cash and promissory notes to Winget.  Am. Compl., ¶ 17, ECF No. 46, PageID.377.  Two of the notes were issued by JVIS on June 29, 2017, one to the GRAT for $135 million, and one to Winget personally for $15 million.  *Ibid.*  The notes called for the payment of the principal balance to be made either on July 1, 2020 or upon demand by the obligee.  When Winget reinstated the Trust, he did not return the promissory notes to the Trust, but rather assigned the $135 million note to himself.  *Id.* ¶ 20.  However, he did retitle the LLC's membership interests to make the Trust, again, the sole member of JVIS.  *Id.* ¶¶ 8, 18.

Thereafter, the Court granted the Agent's request for charging orders directed to the LLC membership interests held by the Trust. The Sixth Circuit affirmed those orders. *See JPMorgan Chase Bank, N.A. v. Winget*, 942 F.3d 748, 750-52 (6th Cir. 2019).  The Agent also sued Winget for unjust enrichment and sought a constructive trust over all of the distributions made during the period after Winget revoked the Trust but before he rescinded the revocation.  The Court granted the Agent summary judgment and ordered the imposition of a constructive trust over the distributions, including the $150 million in promissory notes. It also ordered that Winget immediately assign the promissory notes to the Agent and pay to the Agent $22.5 million that JVIS had paid on the notes. *JPMorgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2021 WL 37479, at *11 (E.D. Mich. Jan. 5, 2021).  On June 1, 2021, the Court entered a final judgment on the fraudulent-transfer claim and the unjust-enrichment claim.  *See JPMorgan Chase Bank, N.A. v. Winget*, No. 21-1568, 2022 WL 2389287, at *2 (6th Cir. July 1, 2022); *Alter Domus v. Winget*, No. 08-13845 (E.D. Mich. Jun. 1, 2021) (judgment).  Winget placed the cash distributions and promissory notes in escrow while he appealed the rulings.

The Sixth Circuit affirmed the fraudulent transfer ruling and affirmed the unjust enrichment ruling it part. *Winget*, 2022 WL 2389287, at *11.  It agreed that Winget's revocation of the Trust constituted a fraudulent transfer executed to put the Trust's assets beyond the reach of the Agent, and that Winget was unjustly enriched by the LLC distributions he received during the revocation period, including the promissory notes issued by JVIS. *Id.* at *5-9.  The court found that, but for the fraudulent revocation, the Trust — not Winget — would have been the member of JVIS, and thus the Trust would have loaned JVIS cash and received the promissory notes in return. *Id.* at *7.  The court concluded that the notes belonged to the Trust and were subject to the charging orders that the Court previously entered. *Ibid.*

The Agent then obtained the promissory notes from escrow, only to discover that Winget and JVIS had amended the terms of the notes on June 30, 2020.  Am. Compl., ECF No. 46, ¶¶ 28-29, PageID.380.  The changes include an extension of the notes' maturity date to July 1, 2023, the elimination of the right to annual interest payments, and the removal of the notes' pay-on-demand feature.  *Id.* at ¶ 23.  The Agent responded by filing this lawsuit, which asserted a claim against Winget and JVIS under Michigan's Uniform Voidable Transfer Act (MUVTA).  JVIS subsequently filed a counterclaim.

On July 3, 2023, two days after the amended maturity date, the Agent demanded payment of the notes and informed JVIS that a failure to pay would constitute an event of default.  *Id.* at ¶¶ 33-34.  JVIS acknowledged receipt of the demand but made no payment.  *Id.* at ¶ 35. Therefore, on July 14, 2023, the Agent filed an amended complaint, adding a breach of contract claim against JVIS and an unjust enrichment claim against both defendants.  The Agent contends that the amendments to the notes constitute a voidable transfer because they were not disclosed and were made with actual intent to hinder, delay, or defraud the Agent while Winget was embroiled in litigation over the notes.  It also alleges that Winget did not receive a reasonably equivalent value in exchange for the amendments.  *Id.* at ¶ 23, PageID.379.

JVIS filed a counterclaim described earlier for a declaratory judgment that the promissory notes were unlawful distributions, and that the Agent is barred from enforcing them.  ECF No. 16. It also alleged that it has the right to recover any payments it made on the notes, including the $22.5 million payment now in the possession of the Agent.  *Id.* ¶ 32, PageID.55.  JVIS contended that the payment was unlawful and must be returned under Michigan Compiled Laws §§ 450.4307(1) and (7).

According to JVIS's counterclaim, it supplies automobile components to equipment manufacturers. *Id.* ¶ 6, PageID.51.  The Winget Trust holds the membership interests in JVIS. *Id.* ¶ 7, PageID.51.  Between 2006 and 2016, JVIS needed capital to grow its business, so it asked Winget to loan back the more than $150 million in cash distributions it previously made to Winget as the beneficial owner of the Trust's membership interests. *Id.* ¶ 8-10, PageID.51.  JVIS memorialized the loans in the June 29, 2017 promissory notes discussed above. *Id.* ¶ 11, PageID.52.

According to JVIS, its business ground to a halt in 2020 due to the COVID-19 pandemic, and JVIS needed capital to preserve its operations. It therefore asked Winget to drop the demand features of the notes and extend the maturity date to July 1, 2023.  JVIS and Winget amended the notes accordingly and included language indicating that the purpose of the amendments was to preserve JVIS.

On March 26, 2024, the Court issued an opinion on several motions to dismiss then pending in the case.  The Court determined that the Agent adequately had pleaded a MUVTA claim and an unjust enrichment claim against both defendants. *Alter Domus, LLC v. Winget*, No. 23-10458, 2024 WL 1287612, at *7 (E.D. Mich. Mar. 26, 2024).  (No party challenged the viability of the breach of contract claim at that time.)  The Court also held that JVIS could maintain its counterclaim for a declaratory judgment under Michigan Compiled Laws § 450.4307(7) that the promissory notes were unlawful distributions but that it could not maintain a claim against the Agent under that provision for a return of the $22.5 million already paid on the notes. *Id.* at *9-10.

That brings us to the two motions filed by JVIS now before the Court.  First, it has filed a motion for partial judgment on the pleadings, asserting that the Agent's breach of contract claim,

which seeks payment of the notes, is barred by Michigan's LLC statute.  Second, JVIS seeks leave

to amend its counterclaim to add an unjust enrichment claim concerning the Agent's receipt from

Winget of the $22.5 million payment on the promissory notes.

## II.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)

applies the same review criteria as a motion filed under Rule 12(b)(6).  *Vickers v. Fairfield Med.

Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006).  The Court accepts the pleaded facts (but not the

unsupported conclusions) as true and determines whether the plaintiff is entitled to legal relief if

all the factual allegations in the complaint are taken as true.  *Rippy ex rel. Rippy v. Hattaway*, 270

F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  The

plaintiff must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  "Plausibility

requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement

to relief." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009)).

JVIS's principal defense in this case is that  the promissory notes it issued to Larry Winget

were unlawful distributions under Michigan law because it was insolvent at the time.  It insists that

the notes themselves and any payments made or to be paid fall within the definition of

"distribution" under the LLC act.  Citing Michigan Compiled Laws § 450.4507(6), it reasons that

the exclusive remedy of judgment creditors of LLC members is to receive the distributions to

which the judgment debtor is entitled.  And because the notes — as distributions to a member —

were unlawful, they should be cancelled.  Moreover, JVIS contends that future payments on the

notes also would be additional distributions, but under Michigan law, a court cannot order an LLC to make a distribution via a member's interest to a judgment creditor.

JVIS also argues that the concepts of both collateral estoppel and judicial estoppel bar the Agent from asserting that payment on the notes is anything other than an LLC distribution. It maintains that in the 2008 litigation, the Agent repeatedly argued that the notes and payments under them were LLC distributions and that this Court and the Sixth Circuit adopted that argument. Regarding judicial estoppel, it contends that the Agent's position in the 2008 case that payments on the notes were not distributions contradicts its present position, that this Court accepted that position, and that permitting the Agent to shift its position now would give it an unfair advantage.

A.

Michigan has enacted comprehensive legislation governing the establishment and operation of limited liability companies. *See* Mich. Comp. Laws § 450.4101 *et seq.* Included in that array are laws that govern the rights of judgment creditors who seek to enforce a judgment against the interests of a member of an LLC. In fact, the Act sets forth the "exclusive remedy by which a judgment creditor of a member may satisfy a judgment out of the member's membership interest in a limited liability company." Mich. Comp. Laws § 450.4507(6).

A member's interest in an LLC is an asset that may be available to satisfy a judgment. That interest is attached by means of a charging order issued by a court and served on the LLC. But "the member's judgment creditor described in the order is entitled to receive only any distribution or distributions to which the judgment creditor is entitled with respect to the member's membership interest." *Id.* § 450.4507(2). The Act plainly states that a court may not, on behalf of a judgment creditor, "require[] a limited liability company to take an action, provide an accounting, or answer an inquiry" in aid of an attempt to satisfy a judgment out of the debtor-

member's membership interest.  *Id.* § 450.4507(6).  A membership interest is defined as a "member's rights in the limited liability company," which includes "any right to receive distributions of the limited liability company's assets and any right to vote or participate in management." *Id.* § 450.4102(q).

The Agent acknowledges that the notes themselves were "distributions" within the meaning of section 450.4102(g): the $150 million in notes were distributed to Winget and his GRAT in the exact portion of their respective interests, being 90% (the GRAT) and 10% (Winget). If JVIS was insolvent at the time, there may be a basis to question the validity of those distributions, but that question is for another day.  JVIS says that ordering *payment* of the notes *also* would constitute a distribution, which the Court is barred from doing under section 450.4507(6).  Under that reasoning, payment also would be barred if JVIS currently is insolvent.  Mich. Comp. Laws § 450.4307(1).

The reasoning JVIS urges does not overlay neatly upon the facts in this case as they are described in the pleadings, particularly respecting the way the Agent came to possess the notes. Recall that the Agent obtained the notes from Winget after the Court impressed that property with a constructive trust.  The Agent did not obtain the notes directly from JVIS, nor from the Winget Trust itself.  On that point, the Sixth Circuit explained that the Agent "would have" moved for charging orders against the Trust's interest but did not do so because Winget had revoked the Trust and personally received the distributions to which the Agent otherwise would have been entitled. *Winget*, 2022 WL 2389287, at *6.  The Agent ultimately did succeed in obtaining a charging order against the Trust's membership interest in JVIS in 2018, *see* Case No. 08-13845, ECF No. 846, but by that time, the notes had already been issued to Winget and the GRAT during the revocation

period.  *See JPMorgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2021 WL 37479, at *3 (E.D. Mich. Jan. 5, 2021).

There is nothing in the record suggesting that Winget ever assigned the notes back to the Trust before the Court ordered him to turn them over to the Agent.  Moreover, the notes, which are attached to the complaint, make no mention of Winget's status as a member of JVIS and explicitly provide that they may be assigned.  *See, e.g.*, ECF No. 46-2, PageID.392.  Perhaps the Trust could have maintained an action to retrieve the notes from Winget if it wished, suggesting ownership properly lies with it, but the Trust never brought such an action.  In fact, JVIS itself, as late as June of 2020 according to the Agent's complaint, treated the notes as if they belonged to Winget individually by executing the amendments with him.  ECF No. 46-4, PageID.399-400.  All of these factors point to a strange reality: the notes were distributions to a former member and now are held by the Agent as an assignee via the constructive trust, not in the Agent's capacity as JVIS's member's judgment creditor.  Of course, equity would demand that any funds realized from payments on the notes must be credited against the judgment the Agent holds against the Trust. But the notes never formally belonged to the Trust.  Section 450.4507(6)'s otherwise powerful "exclusive remedy" provision therefore does not bar the Agent from enforcing the notes according to their terms.

One might characterize this analysis as excessively formalistic, since the Trust now is a member of JVIS again, and the Agent was entitled to the constructive trust because of its status as the Trust's judgment creditor.  However, other aspects of the law of bills and noted support this conclusion.

An LLC's promissory note to a member, in essence, is a contract to make payments in the future, triggering section 307(4) of the LLC Act.  According to that statute:

> At the time a member becomes entitled to receive a distribution, the member has the status of, and is entitled to all remedies available to, a creditor of the limited liability company with respect to the distribution. A company's indebtedness to a member incurred by reason of a distribution made in accordance with this section is at parity with the company's indebtedness to its general, unsecured creditors except as otherwise agreed.

Mich. Comp. Laws § 450.4307(4).  Accepting JVIS's position that a payment on a promissory note given to a member is a distribution, section 450.4307(4) implies that a failure by the LLC to honor its obligation grants the member the status of an unsecured creditor and any concomitant remedies.  *Ibid.*  JVIS likely believes that, in this case, section 450.4507(6) still would bar the Agent, as a creditor of its member, from enforcing all of these remedies, but the statute does not point in that direction.  After all, section 450.4507(6) provides the exclusive remedy for a judgment creditor of a member to satisfy "a judgment out of the member's membership interest."   It says nothing about satisfying a judgment when the member "has the status of, and is entitled to all remedies available to, a creditor of the limited liability company with respect to the distribution." Mich. Comp. Laws. § 450.4307(4).

JVIS insists, however, that any payment on the notes would be a distribution and posits that if this is so, section 450.4507(6) bars recovery in a breach of contract action because the Court could not provide a remedy.  The Agent disagrees, arguing that defining payments as distributions would double-count the value of debts issued to an LLC's members: once when the indebtedness was incurred and once when it was satisfied.  And it contends that JVIS's reading does not account for the provision of the LLC statute JVIS invokes in its counterclaim.  That provision, section 450.4307, generally forbids an LLC from making a distribution during periods of insolvency.  Notably, when specifying the appropriate time for measuring insolvency triggered by a distribution of indebtedness, the statute states that the operative date is "as of the date the indebtedness is authorized if distribution occurs within 120 days after the date of authorization, or the date the

indebtedness is distributed if it occurs more than 120 days after the date of authorization." Mich. Comp. Laws § 450.4307(3)(b). Because the section applicable "[i]n all other cases" refers to "payments," the Agent contends that the legislature knew how to clarify the distinction between a distribution and a payment. The Agent here has the better argument.

JVIS points to other evidence for its preferred interpretation. It argues that the statute defining distributions is broad and countenances payments as a "transfer of money." *See* Mich. Comp. Laws § 450.4102(g). It also contends that *Florence Cement Co. v. Vettraino*, 292 Mich. App. 461, 807 N.W.2d 917 (2011) (per curiam), supports its position. In that case, several members of an LLC took out personal loans from Comerica bank and loaned the proceeds to their business. 292 Mich. App. at 465, 807 N.W.2d at 920. The LLC then made payments on the loans directly to the bank. The Michigan Court of Appeals held that the trial court erred by failing to consider that the LLC's interest payments to Comerica were "distributions because they were transfers of money to or for the benefit of [its] members." *Id.* at 473, 807 N.W.2d at 924. The Agent suggests, in turn, that this case cannot be read nearly so expansively to suggest that any payment on a loan to a member is a distribution because the interest payments at issue were the obligations of its members to the bank, not of the LLC to the bank.

The *Florence* court's conclusion is logical on the facts of that case. Payments by the LLC on the members' personal loans can be characterized as a distribution, just as a payment of a member's personal expenses could be considered as such. But here, the promissory notes are an obligation of the LLC itself. And for the reasons discussed above, the LLC is obligated to the holder of the note who enjoys the status as a general creditor of the LLC.

B.

JVIS also argues that the Agent is collaterally and judicially estopped from asserting that past and future payments on the notes are anything other than distributions.  The Court disagrees.

Collateral estoppel is a concept that prevents a party from asserting an issue that was decided against it in a previous lawsuit.  The following features must be present for the concept to apply: "(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding."  *Kosinski v. Comm'r of Internal Revenue*, 541 F.3d 671, 675 (6th Cir. 2008) (quotation omitted).  JVIS points to two statements of the Agent in the 2008 litigation that estop it from arguing the payments are anything other than distributions:

> "When JVIS paid $22.5 million on the promissory note to the Retained Annuity Trust, Mr. Winget then ultimately transferred that $22.5 million to himself in 2018.  This $22.5 million represents part of the $135 million distribution from JVIS."

Case No. 08-cv-13845, Sealed ECF No. 926, PageID.29858.

> "Here, Mr. Winget has inequitably held the $148,490,481 in distribution payments and $150 million (including $22.5 million payment) in promissory note distributions."

*Id.* at PageID.29862.

It argues that the Special Master, and then the Court, accepted the Agent's argument and characterized the $22.5 million payment as a cash distribution.  *See* Report and Recommendation, ECF No. 949-1, PageID.31180; *Winget*, 2021 WL 37479, at *5.  But this argument strains the record.  JVIS does not point to any discussion, either in the parties' briefs or in the Court's decision, that amounts to an actual decision as to how Michigan law characterizes a payment on a promissory note issued to an LLC member.  At most, the issue was assumed but not decided.  Even that is a

generous characterization, as the Court's ultimate decision *did not* refer to the $22.5 million payment as a distribution, calling it merely a "payment[] made to Winget on account of the promissory notes." *Winget*, 2021 WL 37479, at *5. The Court did not list this amount among the "Cash Distributions" mentioned elsewhere in the opinion. This makes sense because the Special Master, summarizing the amounts sought by the Agent, did not account for the $22.5 million among the cash distributions during the revocation period. ECF No. 949-1, PageID.31193-94. The issue was not raised or litigated in the prior proceeding. Nor has JVIS explained why such a determination would have been necessary to the outcome of the prior proceeding, the result of which was the imposition of a constructive trust over the notes, the $22.5 million, and various other distributions. Collateral estoppel does not apply here.

For similar reasons, JVIS's attempt to assert that the Agent is bound by principles of judicial estoppel is a nonstarter. Despite JVIS's assertions, it is not clear that the Agent ever took a concrete position on whether the $22.5 million payment was itself a distribution. Its present explanation that the statement was "merely making the point that by the time that the Agent discovered the existence of the Notes, JVIS had already made a payment that had reduced the principal on those notes" is a plausible reading of the record. Resp., ECF No. 112, PageID.1230. In any event, as mentioned above, the Court never explicitly adopted either characterization of the $22.5 million, so the requisite criteria for the application of judicial estoppel are not present.

\* \* \* \* \*

Breach of contract remedies are available to the plaintiff against JVIS for its failure to make payment on the notes. The motion for partial judgment on the pleadings will be denied.

III.

The Agent filed a motion for partial summary judgment on its breach of contract claim against JVIS for its failure to make timely payment on the notes and on JVIS's counterclaim against it for declaratory judgment that the notes are unenforceable.  Initially, it points out that the notes undisputably are contracts, and JVIS failed to make payment by the amended maturity date of July 1, 2023.  It asserts that JVIS's only defense to this claim — that the notes are unenforceable under Michigan's LLC Act (Mich. Comp. Laws § 450.4307) — is inapt here because the Court previously held that the Act does not create a cause of action for the return of distributions in the possession of a third-party, and the notes are in its possession, not Winget's.

In response, JVIS repeats its argument discussed above that the Court cannot enforce payment of the notes because that in essence would compel JVIS to make a distribution, and such an order is forbidden by Michigan Compiled Laws § 450.4507(6).  It also argues that the Agent's summary judgment motion is a disguised attempt to obtain reconsideration of the Court's ruling on the Agent's motion to dismiss JVIS's counterclaims (ECF No. 85).  It emphasizes that the Court previously held that it may bring a declaratory judgment action on the basis that it was insolvent on the date the notes were issued, and it avers that the Agent never has come forward with evidence that JVIS was solvent on the date of the distribution.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.

2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute.  *Ibid.* (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

The motion for partial summary judgment largely plows the same ground as the Agent's previous motion to dismiss the counterclaim and JVIS's motion for judgment on the pleadings. The Agent presses the argument that it is entitled to judgment as a matter of law on its breach of contract claim against JVIS for failing to make payment on the notes because they are in default and on JVIS's counterclaim of insolvency.   It is unclear how this could be so.  Its arguments primarily focus on whether payment on a note would be considered a distribution, but that question is largely beside the point of whether the notes here were permissible distributions.  The Court previously held that "[a]n action to test the validity of an LLC's distributions is the appropriate vehicle for declaratory relief when a claim is based on those distributions, as is the case here." *See Alter Domus, LLC v. Winget*, No. 23-10458, 2024 WL 1287612, at *9 (E.D. Mich. Mar. 26, 2024). By a similar token, JVIS's affirmative defense that the notes are invalid remains viable.  The Court's previous holding, combined with the Agent's failure to provide any *evidence* suggesting that JVIS could make distributions as of the measurement date, appears to foreclose the Agent's entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

- 16 -

The Agent's arguments to the contrary appear to latch onto another of the Court's previous holdings, that the "LLC statute does not create a cause of action for the return of distributions already in the possession of a third party," *id.* at *10, and takes this statement to mean that "any attempt to recover the Notes from the Agent on the basis that JVIS issued them in violation of Section 307 fails," MSJ, ECF No. 118, PageID.1301.  It repeats a variation of this argument in its reply, asserting that discovery clarified that the measurement date for the distribution was June 29, 2017, when the notes should have been in the possession of the Agent, so JVIS cannot invoke the LLC Act to recover them.  Reply, ECF No. 162, PageID.2313-14.  These arguments conflate JVIS's claim for the return of the funds already paid, which the Court ruled out, with JVIS's claim that the notes are unenforceable because it was insolvent when they were issued.  The Agent mischaracterizes JVIS's affirmative defense of insolvency and its related counterclaim as seeking the return of the notes — cancellation, perhaps, but not "return."  Again, JVIS's contention is that the notes are void because they were borne of a statutory violation, so it is not required to fulfill its contractual obligation to make payments on them.  It does not ask for the instruments to be returned.

The question remains whether JVIS was insolvent when it issued the notes as distributions, that is, on the measurement date.  That is a fact question that cannot be resolved by the motion presented here.

IV.

JVIS seeks leave to amend its counterclaim to add a claim for unjust enrichment concerning the $22.5 million obtained by Alter Domus from its constructive trust action against Larry J. Winget.  The Agent responds that the proposed unjust enrichment claim is futile because the $22.5 million was recovered from Winget, not JVIS, under an order of this Court, thereby reducing the

- 17 -

amount of the substantial judgment against the Trust that remains outstanding.  It also argues that the proposed amendment comes too late in the proceedings and would cause prejudice because most of the discovery in the case already has been completed.

Motions to amend before trial generally are governed by Federal Rule of Civil Procedure 15(a), and Rule 15(a)(2) requires a party seeking to amend its pleadings at this stage of the proceedings to obtain leave of court.  However, where the Court has issued a scheduling order establishing a deadline for filing amended pleadings, and that deadline has passed, consideration of a motion to amend filed after the deadline set in the Court's scheduling order entails a two-step process under Rules 16(b) and 15(a).  *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003).  Under Rule 16(b), the "schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "Only after the movant shows good cause may the Court consider whether to grant leave under Rule 15(a)'s directive that 'leave shall be freely given when justice so requires.'"  *Little Mountain Precision, LLC v. DR Guns, LLC*, No. 22-1471, 2023 WL 5625739, at *2 (N.D. Ohio Aug. 31, 2023) (quoting *Cooke v. AT&T Corp.*, No. 05-374, 2007 WL 188568 (S.D. Ohio Jan. 22, 2007)).

The scheduling order governing this case makes clear that the deadline for a party to amend its pleadings without further leave of Court was July 14, 2023, and that a party must move for an amendment "no later than 30 days before the close of discovery," which was set for December 15, 2023.  ECF No. 44.  JVIS filed this motion to amend on April 15, 2024, well after the close of discovery.  Therefore, the combined weight of the Rule 15 and Rule 16 standards applies, and JVIS must demonstrate good cause for this late amendment.

JVIS points out that some courts offer parties an opportunity to amend their complaint following a dismissal order, citing *Carhartt Inc. v. Innovative Textiles, Inc.*, No. 17-13604, 2018

- 18 -

WL 10320608 at *2 (E.D. Mich. July 27, 2018).  In that case, the court found that the plaintiff had satisfied Rule 16's good cause standard where the court had not ruled on the pending motion to dismiss until after the amendment deadline in the scheduling order had passed.  Critical to this decision was the court's belief that it was reasonable for the proponent of a claim to litigate a motion to dismiss fully and await the Court's ruling before filing an amendment.  *Id.* at *1.  The Agent suggests that the *Carhartt* court was motivated by the fact the plaintiff lacked sufficient notice of the pleadings' deficiencies and does not stand for the plaintiff's ability to add wholly new claims.

JVIS's reasons for the delay are not persuasive.  JVIS contends that the need to assert an unjust enrichment claim only occurred to it after the Court issued its opinion dismissing Count 2 of its counterclaim, leaving it without a remedy to recover the approximately $22.5 million in the possession of the Agent.  In its March opinion, the Court determined that the claim, brought under Michigan's LLC statute, failed to state a claim because the statute "does not create a cause of action for the return of distributions already in the possession of a third party."  *Alter Domus, LLC v. Winget*, No. 23-10458, 2024 WL 1287612, at *10 (E.D. Mich. March 26, 2024).  This conclusion could not have been entirely surprising given the lack of case law supporting JVIS's original theory of recovery.  Pleading unjust enrichment in the alternative always was an available option, and JVIS has cites no new facts that were not available to it at the time it filed its original counterclaim.  *See Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 692 (E.D. Mich. 2012) (explaining that unjust enrichment frequently is pleaded as an alternative claim).

JVIS has not established good cause to enlarge the pleading amendment deadline.  The motion to amend the counterclaim will be denied.

V.

For the reasons discussed, JVIS is not entitled to a partial judgment on the pleadings.  Nor has it established good cause to extend the time for amendments to the pleadings.  The Agent is not entitled to partial summary judgment on its breach of contract claim because of the unresolved, fact-bound affirmative defense and counterclaim for declaratory judgment.

Accordingly, it is **ORDERED** that the motions by defendant JVIS for partial judgment on the pleadings (ECF No. 98) and for leave to amend the counterclaim (ECF No. 93) are **DENIED**.

It is further **ORDERED** that the plaintiff's motion for partial summary judgment (ECF No. 118) is **DENIED**.

s/David M. Lawson     
DAVID M. LAWSON
United States District Judge

Dated:  October 24, 2024

- 20 -