UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTER DOMUS, LLC,

        Plaintiff/Counter-Defendant,        Case Number 23-10458

v.        Honorable David M. Lawson

LARRY J. WINGET and JVIS-USA, LLC,

        Defendants/Counter-Plaintiffs,
_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO EXCLUDE OPINIONS OF DEFENDANT'S EXPERT WITNESS GREGORY LIGHT

One of the issues in this lawsuit brought by plaintiff Alter Domus to enforce its interest in certain promissory notes issued by defendant JVIS-USA, LLC, is whether that defendant was insolvent when it issued those notes. Defendant JVIS-USA intends to offer the testimony of appraiser Gregory Light on the value of the company when it issued the notes on June 29, 2017. Alter Domus, an agent for a consortium of investors, moved to exclude that opinion testimony, arguing that his methodology is flawed, his conclusions are unreliable, he failed to furnish certain supporting documentation and respond to deposition questions, and therefore the defendant cannot satisfy the requirements of Evidence Rule 702 and Civil Rule 26(a)(2). With one exception — a legal conclusion offered by Light that is not helpful and that he is not qualified to give — his purported testimony likely will be admissible. The motion, therefore, will be granted in part and denied in part. The Court granted in part and denied in part the motion on the record. This opinion more fully explains its rationale.

I.

The facts of the case are familiar to the parties, and the Court has summarized them in the several opinions filed in this case and the related matter of *Alter Domus v. Larry J. Winget*, No.

08-13845 (E.D. Mich.). For the purpose of this motion, it is enough to say that JVIS issued two promissory notes in the total amount of $150 million, which plaintiff Alter Domus now holds through its effort to collect a judgment against the Larry J. Winger Trust. In this action on the notes, payment of which is in default, JVIS filed a counterclaim seeking for a declaratory judgment that the notes were unlawful distributions, and that the Agent is barred from enforcing them. JVIS contends that the notes amounted to unlawful distributions under Michigan's LLC statute because it was insolvent when they were issued.

The Agent seeks to exclude the testimony of JVIS's expert, appraiser Gregory Light. According to his report dated December 19, 2023, Light endeavored to analyze the value of JVIS as of June 29, 2017 "under the solvency test . . . prescribed under MCL 450.4307 et. seq." ECF No. 120-3, PageID.1480. His analysis consisted of the following steps:

> 1. Calculating the equity position as of the Measurement Date of JVIS USA (excluding its membership interest in JVIS Manufacturing, LLC ("JVIS Manufacturing"));
>
> 2. Estimating the value of JVIS USA's membership interest in JVIS Manufacturing;
>
> 3. Summing the items above to determine the total equity position of JVIS USA and determining whether or not its assets exceeded its liabilities; and
>
> 4. Preparing other analyses to support whether or not these conclusions were reasonable and supportable as detailed in the "Other Considerations" section of this report.

*Ibid.* Light explained that JVIS is comprised of two operating business units, JVIS USA – Imports and JVIS USA – Harper, as well as its membership interest in JVIS Manufacturing, LLC, a wholly owned subsidiary. *Id.* at PageID.1481. To determine the equity value of JVIS, he added the balance sheets of Harper and Imports to obtain their equity value and added the estimated market value of JVIS's membership interests in JVIS Manufacturing — the calculation of which consumes the majority of his report — leading to a total of negative value of $11,946,780. *Ibid.* Light

concluded that "JVIS USA has liabilities exceeding its assets and under the Test prescribed under the Statute, [so] distributions cannot be made." *Ibid.*

The Agent contends that Light failed to give full consideration to alternate valuation methods that are allowed for determining the validity of distributions under Michigan Complied Laws § 450.4307. His methodology is flawed, it says, because he used inconsistent methods for his evaluation of different operating units within JVIS, and his methodology is unreliable because he could not certify that the financial statements he used were prepared by acceptable accounting principles. He also contends that Light refused to produce a spreadsheet that he used to create the schedules to his report, and he refused to answer questions during his deposition about work he had performed for Rehmann Consulting to value JVIS in 2016. JVIS disputes each of these arguments in turn.

## II.

As a general matter, "expert" testimony consists of opinions or commentary grounded in "specialized knowledge," that is, knowledge that is "beyond the ken of the average juror." *See United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016); Fed. R. Evid. 702. Such testimony is governed by Evidence Rule 702, which was modified in December 2000 to reflect the Supreme Court's emphasis in *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), on the trial court's gate-keeping obligation to conduct a preliminary assessment of relevance and reliability whenever a witness testifies to an opinion based on specialized knowledge. Before expert witness testimony may be received, the proponent must demonstrate that, more likely than not, the testimony is "(a) helpful to the trier of fact, (b) 'based on sufficient facts or data,' and (c) 'the product of reliable principles and methods' that (d) have been 'reliably applied' to the 'facts of the case.'" *In re Onglyza (Saxagliptin) &*

*Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*, 93 F.4th 339, 345 (6th Cir. 2024) (quoting Fed. R. Evid. 702 (2011)). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008).

Rule 702 was amended in 2023 to reinforce the idea, sidestepped sometimes by some courts, that Evidence Rule 104(a) entrusts the court with deciding whether the admissibility criteria have been satisfied, rather than treating them as "questions of weight" to be determined by the factfinder. Fed. R. Evid. 702 Advisory Committee Notes to 2023 Amendments; *see also* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible."). However, "nothing in the amendment requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support. The Rule 104(a) standard does not require perfection." Rule 702 Advisory Committee Notes to 2023 Amendments.

A. Opinion on the Legality of the Notes

Michigan's limited liability company law curtails an LLC's prerogative to make distributions when the company is insolvent or the distribution would make it so. Mich. Comp. Laws § 450.4307. The operative language states that "a distribution shall not be made if . . . [t]he limited liability company would not be able to pay its debts as they become due in the usual course of business." *Id.* at § .4307(1)(a). This insolvency assessment is subject to some measure of latitude:

> The limited liability company may base a determination that a distribution is not prohibited under subsection (1) on financial statements prepared on the basis of accounting practices and principles that are reasonable under the circumstances, on a fair valuation, or on another method that is reasonable under the circumstances.

- 4 -

*Id.* at § .4307(2).

The parties agree that the measurement date for determining the effect of the issuance of the promissory notes is June 29, 2017. The Agent contends, though, that Light's opinion on the illegality of the distributions in the form of the promissory notes is methodologically unsound because it rests on a misreading of the statutory provisions quote above. Light's chief conclusion is that the distributions were impermissible because as of June 29, 2017, JVIS's liabilities exceeded its assets. Light Report, ECF No. 120-3, PageID.1481. He rested this opinion on the conclusion that the issuance of the notes made "[t]he limited liability company's total assets . . . less than the sum of its total liabilities . . . ." Mich. Comp. Laws § 450.4307(1)(b); *see* Light dep., ECF No. 121-3, PageID.1668-69. The Agent takes issue with this logic, asserting that the statute provides other ways for an LLC to justify its distributions, so Light's analysis, confined to one method, prevents him from opining that the notes were impermissible distributions. In response, JVIS argues that Light's opinion is based on a correct reading of the law, as the provision cited by the Agent only applies where an LLC attempts to justify an otherwise improper distribution.

The parties develop extended arguments about the interpretation of the two statutory provisions to justify their positions on Light's analysis, which focus on Light's opinion that "under the Test prescribed under the Statute, distributions cannot be made." Light Report, ECF No. 120-3, PageID.1481. Those arguments ignore a more fundamental flaw in that opinion: an expert witness may not testify to legal conclusions. *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)). "Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *United States v. Gordon*, 493 F. App'x 617, 626-27 (6th Cir. 2012). Light's conclusion that the notes were void relies on his own

construction of the standards prescribed by the LLC Act, the ultimate interpretation of which is the province of the Court. Applying the facts of the case to the law is the duty of the finder of fact.

That is not to say that Light may not opine on whether the notes amounted to distributions, and whether JVIS's liabilities exceeded its assets when the notes were issued. His detailed analysis on this question may be helpful to the finder of fact because it tracks section 450.4307(1)(b), which is undisputably relevant to the inquiry. However, Light may not testify that issuance of the notes constitutes an illegal distribution or that the notes are "void."

### B. Method of Valuation

The Agent next asserts that Light's opinion is unreliable because he used an incompatible mixture of methods to assess the value of JVIS's holdings. It maintains that Light's decision to assess the book value of JVIS's Harper and Imports business units while calculating the market value of JVIS Manufacturing is results driven. The Agent asserts that had Light used the same method for each entity, he would have discovered that JVIS's assets exceeded its liabilities. JVIS responds that Light's approach was proper because JVIS Manufacturing is a wholly owned subsidiary, so principles of corporate law dictate that JVIS does not own JVIS Manufacturing's assets but merely has an ownership interest in it.

As discussed earlier, Light began his analysis by adding the balance sheet totals for the equity value of JVIS's two "operating business units," Harper and Imports. ECF No. 120-3, PageID.1481. Including the notes as a liability, he found that the equity value of the pair is negative $25,488,780. *Id.* at PageID.1481, 1520. Then, Light used several methods to derive an estimate of the market valuation of JVIS's membership interest in JVIS Manufacturing, which he pegged at $13,542,000. *Id.* at PageID.1481. Combining these sums yielded a total value of negative $11,946,780. *Ibid.*

The Agent has not offered a sufficient argument that his method was unreliable under the circumstances. Neither side has furnished information disclosing the legal status of Harper and Imports within JVIS, but neither do they contest that JVIS Manufacturing is a wholly owned subsidiary. This is significant because the value of a wholly owned subsidiary to its parent comes from the value of the membership interest, not from the equity value obtainable from its balance sheet. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary."); *United States v. Banyan*, 933 F.3d 548, 554 (6th Cir. 2019); *see also In re Steffner*, 479 B.R. 746, 761 (Bankr. E.D. Tenn. 2012) ("It is black-letter law that the property of a corporation or limited liability company belongs to that entity, not the owners of the entity, even if the corporation has only one shareholder or member."); *cf. In re Rent-A-Wreck of Am., Inc.*, 580 B.R. 364, 381 n.130 (Bankr. D. Del. 2018) ("Debtors make a valid point during argument that the assets of Bundy's wholly owned subsidiaries are not assets of Bundy's estate and do not need to be disclosed on Bundy's Schedules. But, the value of Bundy's equity interest is an asset of the estate and the value of Bundy's subsidiaries, therefore, is a relevant inquiry.").

The strongest pushback against these postulates offered by the Agent is that JVIS reports JVIS Manufacturing's income on its consolidated tax returns. However, both parties acknowledge that JVIS is *required* to report its returns this way by operation of the tax code. See ECF No. 121, PageID.1640; ECF No.145, PageID.2079. Although the Agent may want to explore this putative inconsistency on cross-examination, this query does not demonstrate that Light's method was unreliable.

The Agent suggests that Light's methodology is inconsistent with the method he employed in the so-called Rehmann Valuation approximately a year earlier, which was the subject of an undecided claim of privilege. The magistrate judge resolved the privilege concerns over that document in the Agent's favor. Nonetheless, Light's different approaches in the two studies is not disqualifying. Both principles and methods are recognized, and perhaps they can be reconciled. Again, though, the use of different approaches does not undermine a finding in this case that principles and methods "have been 'reliably applied' to the 'facts of [*this*] case.'" *In re Onglyza Prod. Liab. Litig.*, 93 F.4th at 345 (emphasis added). The 2016 report assessed JVIS's fair market value and did not purport to answer whether JVIS's liabilities exceeded its assets, which Light sought to address here. Rehmann Report, ECF No. 120-4, PageID.1542. In a last gasp, the Agent insists in its reply that Light fails to explain why he did not perform a market valuation for Harper and Imports, but it has not furnished any evidence establishing that those entities have a distinct legal form like JVIS Manufacturing, so Light's decision not to conduct such an analysis is not obviously improper. This rationale is not a basis to exclude Light's opinions.

C. Validity of Financial Statements

The Agent next asserts that Light's opinion is unreliable because he could not state whether the financial statements he used to complete his analysis "were prepared in accordance with any particular set of accounting practices or principles." Light Dep., ECF No. 121-3, PageID.1673. It argues section 450.4307(2) of the LLC law requires that an LLC seeking to justify a distribution that would otherwise be prohibited can use financial statements only when those statements were "prepared on the basis of accounting practices and principles that are reasonable under the circumstances." Mich. Comp. Laws § 450.4307(2). The Agent believes that because Light could not testify whether the data he used comported with this statutory term, his opinion is

methodologically questionable. JVIS responds that Light's reliance on financial statements provided to him by the company is common practice for expert business valuations and states that JVIS's business records will be authenticated at trial.

As JVIS asserted, it is common practice for business valuations to be based on the financial statements furnished by the subject business. Those statements constitute the "sufficient facts or data" required by Rule 702. Fed. R. Evid. 702(b). Michigan's LLC law does not override that evidentiary rule. *Legg v. Chopra*, 286 F.3d 286, 290 (6th Cir. 2002) (observing that the Sixth Circuit "has categorically stated that '[t]he admissibility of expert testimony is a matter of federal, rather than state, procedure.'") (quoting *Brooks v. Am. Broad. Cos.*, 999 F.2d 167, 173 (6th Cir. 1993); *see also Albright v. Christensen*, 24 F.4th 1039, 1044 (6th Cir. 2022) (citing *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 421-25 (2010) (Stevens, J., controlling opinion)).

Moreover, it is not clear that Michigan's LLC law definitively requires an expert to be capable of speaking to the accounting principles used to prepare the company's financial statements. Under the Agent's reading, an LLC can only justify a distribution when it is grounded on "financial statements prepared on the basis of accounting practices and principles that are reasonable under the circumstances. . . ." Mich. Comp. Laws § 450.4307(2). To the extent that subsection (2) has any applicability to Light's task here, a proposition the parties dispute, the Agent forgets that the statute continues beyond the language quoted. In fuller context, the statute specifies that an LLC can use "financial statements prepared on the basis of accounting practices and principles that are reasonable under the circumstances, on a fair valuation, *or on another method* that is reasonable under the circumstances." *Ibid.* (emphasis added). The Agent takes issue with Light's inability to say whether the financial statements he used were prepared under

reasonable accounting principles, but using validated financial statements is merely one avenue available under the statute when an LLC attempts to justify its distributions. In fact, in its motion for partial summary judgment, the Agent cites a case that undermines its argument: in *Meeks v. PRN, Inc.*, 35 F.3d 571, at *1 (9th Cir. 1994) (table), the Ninth Circuit considered Oregon's business corporation statute, which like the provision at issue here, allows a board of directors to determine that a distribution was not prohibited "either on financial statements prepared on the basis of accounting practices and principles that are reasonable in the circumstances or on a fair valuation or other method that is reasonable in the circumstances." *Ibid.* (citing Or. Rev. Stat. § 60.181(4)). Reversing the district court's grant of summary judgment in favor of the business on the ground that its directors used no reasonable method to determine the corporation's solvency, the Ninth Circuit stressed that the small, closely-held nature of the company vitiated the need for the directors to conduct a detailed analysis in support of their conclusion that the company was financially capable of executing the stock purchase agreement at issue. *Ibid.* Likewise here, Light's inability to confirm that JVIS relied on particular accounting is not a blow to his methodology so much as it is a question about the trustworthiness of the data he evaluated, which JVIS maintains will be authenticated at trial. That likely will be sufficient satisfy any concern about the accounting principles. *Cf. Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006) ("In the absence of an alternative accounting convention pertinent to the case, it may be assumed that certified public accountants base their calculations and opinions on the normal general standards of their profession, *i.e.*, generally accepted accounting principles."). This argument does not suggest that Light's opinion is methodologically unsound.

D. Procedural Issues

Under the pretrial disclosure rules, a party intending to call a witness must product a report that contains "the facts or data considered by the witness in forming [her opinions]" and "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(ii)-(iii). The Agent argues that JVIS's failure to disclose the spreadsheet Light used to generate his report should lead to the exclusion of his opinion under that rule. The significance of that document is somewhat elusive based on the parties' presentation. It appears, though, that the dispute concerns a "master spreadsheet" that Light used to build the financial schedules attached to his report from financial data supplied by JVIS. ECF No. 121, PageID.1644. According to JVIS, the document simply automated the calculations Light described in his report, and the Agent has all the data that Light imported into the spreadsheet. ECF No. 145, PageID.2083. It says the Agent even has a PDF copy of the spreadsheet but that it cannot turn it over in its native form without great hardship because it is filled with confidential data belonging to Light's other clients, and it would be challenging to "clean up." *Id.* at PageID.2084.

The phrase "facts or data" in Rule 26(a)(2)(B)(ii) is a change from a pre-2010 version of the rule, which some courts had held required the disclosure of privileged materials. *Parker Hannifin Corp. v. Standard Motor Prod., Inc.*, No. 19-00617, 2021 WL 5801850, at *2 (N.D. Ohio Dec. 7, 2021) (citing *Yeda Research & Dev. Co. v. Abbott GmbH & Co. KG*, 292 F.R.D. 97, 104-05 (D.D.C. 2013)). As the Advisory Committee Notes make clear, the Rule's reference to "facts or data" is to be given a broad scope, requiring "disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." 2010 Advisory Comm. Note to Rule 26. An expert has "considered" such material if he "received, reviewed, read, or authored . . . [it] before or in connection with the forming of his opinion, if the subject matter relates to the

facts or opinions expressed." *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 05-80, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007) (citations omitted).

Despite the broad scope of Rule 26(a)(2)'s disclosure requirement, it is hard to find any rule violation. Even if the spreadsheet sought by the Agent can be considered "facts or data," under Rule 26(a)(2)(B)(ii), the information it summarized was made available to the Agent. It may be more accurate to characterize the spreadsheet as a tool used by Light to compile the financial data supplied to him by JVIS. JVIS describes the spreadsheet as Light's method for "automat[ing] the calculations described in his report," ECF No. 145, PageID.2803, and it emphasizes that the Agent has all of the underlying data Light placed in the document. *Ibid.* The spreadsheet thus is more akin to a scratch pad, which no one would reasonably argue is subject to disclosure. The Agent insists that it needs the spreadsheet to test the schedules forming the basis of Light's report, arguing that he combined information provided by JVIS with information he "uses for all his clients." ECF No. 159, PageID.2279. This argument mischaracterizes the record. Light did not use other client information in the spreadsheet for his computations about JVIS; rather the spreadsheet merely contains "confidential, proprietary information belonging to other companies" because Light uses the same master spreadsheet for all his clients. Resp., ECF No. 145, PageID.2084. Moreover, Light's calculations are detailed in his extensive report, which the Agent can use to assess his work using its own spreadsheets. The non-disclosure of the spreadsheet is not a good basis to challenge Light's testimony.

E.  Deposition Testimony

Last, the Agent asserts that the Court should preclude Light from testifying because he refused to answer questions during his deposition about his work on a 2016 valuation of JVIS conducted by Rehmann Consulting. According to the parties, the so-called Rehmann Report was

prepared in 2016 by Rehmann Consulting, a Michigan firm specializing in business appraisals, for Timothy Semro, an attorney retained by defendant Winget. The Report's attached cover letter indicates that it was intended for Winget's "tax planning purposes." Rehmann Report, ECF No. 120-4, PageID.1536. Light signed the report and completed a "technical review" of the contents. *Id.* at PageID.1588. Although the document is dated May 17, 2017, Rehmann sought to assess the fair market value of 90 class-B non-voting units in JVIS as of July 1, 2016. *Ibid.* This task necessarily involved an attempt to value JVIS itself, and Rehmann estimated that JVIS's value exceeded $400 million on that date. *Id.* at PageID.1570. Winget and JVIS asserted that the document is protected by the attorney-client and accountant-client privileges, resisting the Agent's motion to compel its production. Rehmann also moved to quash a deposition noticed by the Agent, which sought further information about the Report. ECF No. 86.

The Court referred the privilege dispute to Magistrate Judge David R. Grand. On July 11, 2024, Judge Grand issued an opinion holding that the Report was not subject to a valid claim of privilege, in large part because Winget had waived any privilege by disclosing it to the Agent in the connected 2008 litigation. *See* ECF No. 157, PageID.2201. Both Winget and JVIS appealed that ruling to this Court, and the Court overruled the objections. ECF No. 208.

At the time of Light's deposition, Judge Grand had not already ruled on the privilege concerns, and counsel for the Agent sought to question Light about the 2016 Report. Light dep., ECF No. 121-3, PageID.1665. Light stated that he was not comfortable answering questions about the report because he was aware Rehmann had moved to quash the subpoena issued by the Agent, and he did not "want to get myself into any legal trouble or trouble with my former employer. . . ." *Ibid.* Counsel for all parties therefore agreed to keep the deposition open so that Light could be

questioned again about the Report should the Agent prevail on its position that it was not privileged. *Id.* at PageID.1666.

Now, seeking to bar Light's testimony, the Agent points out that JVIS has not filed any motions to terminate or limit Light's deposition under Rule 30(d)(3) and cites several cases where courts excluded or limited expert opinions where the expert refused to testify about matters relevant to their opinion, but not all are on point with the facts here. *See Sanchez v. Boston Scientific Corporation*, 12-05762, 2014 WL 4851989, at *11-12 (S.D. W. Va. Sept. 29, 2014) (excluding testimony from expert who refused to explain or elaborate why peer-reviewed scientific literature contradicting his position was faulty on the grounds that his silence called his methodology into question); *Gray v. Cottrell, Inc.*, 05-1852, 2007 WL 4864393, at *2 (E.D. Mo. Jan. 11, 2007) (granting a party's motion to strike an expert witness under Rule 26 where the witness asserted she could not testify about the basis for her opinion due to a statute and a contract with a competitor); *see also Beach Mart, Inc. v. L&L Wings, Inc.*, No. 11-44, 2020 WL 6708236, at *2-3 (E.D.N.C. Nov. 13, 2020) (excluding witness's testimony at trial on certain topics that the witness refused to testify about during his deposition where the witness relied on an advice-of-counsel defense and also invoked the attorney-client privilege).

However, as the parties agreed to keep the deposition open, it is up to the plaintiff to continue it for the sole purpose of asking about the Rehmann Report. Discovery has closed, but the Court will allow a brief extension for that sole purpose. In all events, the refusal to answer questions at the initial deposition until the privilege issues were resolved is not a basis to bar Light's testimony.

III.

Business appraiser Gregory Light may not testify to legal conclusions concerning the legality of JVIS's issuance of the promissory notes in question. Otherwise, his valuation testimony likely will pass muster at trial under Evidence Rule 702.

Accordingly, it is **ORDERED** that the plaintiff's motion to exclude the expert testimony of Gregory Light (ECF No. 121) is **GRANTED IN PART AND DENIED IN PART**. Mr. Light may not give opinion testimony that the promissory notes constituted illegal distributions under Michigan law or that the notes are void. The motion is **DENIED** in all other respects.

It is further **ORDERED** that the plaintiff may continue the deposition of Gregory Light to complete its questioning regarding the Rehmann Report, provided that the deposition is completed **on or before December 16, 2024**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   November 26, 2024