UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTER DOMUS, LLC,

        Plaintiff/Counter-Defendant,        Case Number 23-10458

v.        Honorable David M. Lawson

LARRY J. WINGET and JVIS-USA, LLC,

        Defendants/Counter-Plaintiffs,
_____/

**OPINION AND ORDER OVERRULING OBJECTIONS TO MAGISTRATE JUDGE'S ORDER COMPELLING PRODUCTION OF DOCUMENTS AND DISSOLVING STAY**

On February 12, 2025, Magistrate Judge David Grand, after referral to him of a motion to compel certain discovery, entered an order holding that the crime-fraud exception to the attorney-client privilege applied to a claim of privilege asserted by the defendants to resist the production of certain email communications and witness notes. The defendants objected to the order, and the Court stayed the order pending a ruling on the objections. Because Judge Grand's ruling was not clearly erroneous or contrary to law, the objections will be overruled. The stay will be dissolved.

I.

One lingering evidentiary dispute in this case concerns the production of certain documents sought by the plaintiff subject to a claim of attorney-client privilege by the defendants. On June 21, 2024, the Agent moved to compel the production of approximately 40 documents listed on the defendants' privilege logs containing communications between them and counsel regarding the amendments to the promissory notes that are the subject of this litigation. It argued that the defendants had waived the attorney-client privilege over these documents because they were communications among the defendants, not solely between each defendant and counsel. In the alternative, the Agent argued that the crime-fraud exception to the attorney-client privilege

rendered the documents unprotected because there were indicia that the communications concerned a strategy to perpetrate a "fraud" by amending the promissory notes, which are the subject of the present lawsuit, in anticipation of the Agent's ongoing collection efforts.

The Court referred the motion to Magistrate Judge David R. Grand, who heard oral argument on the motion on September 11, 2024. After that hearing, the defendants sought leave to submit additional briefing, which Judge Grand permitted. On December 20, 2024, Judge Grand issued an order holding that the common interest exception applied, so the defendants had not waived the privilege by sharing the documents with each other. However, he determined that an *in camera* review of documents concerning the 2020 amendments to the notes was necessary to determine whether the Agent was entitled to the documents under the crime-fraud exception. He therefore ordered the defendants to make them available to the Court within fourteen days. Judge Grand denied the defendants' motion for reconsideration, and he then conducted an *in camera* review.

On February 12, 2025, he issued a brief order requiring that all of the documents be disclosed to the Agent. The core provision of the order is set forth here:

> Having reviewed the *In Camera* Documents, the Court finds that they must be produced to the Agent pursuant to the crime-fraud exception. In that regard, bearing in mind the standards for the crime-fraud exception and the detailed analysis contained in the Court's Order and Reconsideration Order, the Court is satisfied that the *In Camera* Documents (1) contain evidence of an apparent intent to hinder, delay, or defraud the Agent by way of the transfers the Agent contends violated Michigan's Uniform Voidable Transactions Act, M.C.L. § 566.31 *et seq.*; and (2) were reasonably related to the preparation or furtherance of those transfers. To be clear, however, the Court makes no determination as to the ultimate issue of whether a violation of the MUVTA occurred.

ECF No. 250, PageID.3752.

At the defendants' request, the Court stayed the effect of Judge Grand's order while they jointly appealed. The matter is now before the Court for review under Civil Rule 72(a).

II.

Under 28 U.S.C. § 636(b)(1), a magistrate judge has the authority "to hear and determine any pretrial matter pending before the court," with the exception of certain dispositive motions. 28 U.S.C. § 636(b)(1)(A). A party aggrieved by a magistrate judge's order may file objections to it within two weeks. Fed. R. Civ. P. 72(a). Thereafter, the Court reviews an order by a magistrate judge on a nondispositive motion to determine whether the decision is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a) (stating that upon receipt of timely objections, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law"); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). A decision is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948), or where the magistrate judge improperly applies the law or employs an erroneous legal standard, *Beck v. Haik*, 377 F.3d 624, 636 (6th Cir. 2004). Where there are two plausible views, a decision cannot be "clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

The defendants first contend that the magistrate judge should not have granted the Agent's motion because the Agent itself never sponsored evidence that the crime-fraud exception should apply. The plaintiff counters that the defendants cannot attack that order now because it is too late. But Judge Grand incorporated in his dispositive order the rationale of the earlier order to submit the documents to him. Nevertheless, the objection lacks merit.

Although the parties' briefs rely mostly on federal cases discussing the crime-fraud exception, state law governs the scope of the privilege in diversity cases such as the present one.

Fed. R. Evid. 501; *see also In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006); *S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, 763 F. App'x 401, 404 (6th Cir. 2019). In Michigan, "[t]he crime-fraud exception to the attorney-client privilege is predicated on the recognition that where the attorney-client relationship advances the criminal enterprise or fraud, the reasons supporting the privilege fail." *People v. Paasche*, 207 Mich. App. 698, 705, 525 N.W.2d 914, 917 (1994). Michigan courts have not had much occasion to explain the *process* by which a court is to evaluate claims that the exception applies. However, federal courts frequently employ an *in camera* review of documents allegedly subject to the crime-fraud exception. *See Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 517 (6th Cir. 2014). To determine whether a party is entitled to that measure, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person, that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989) (citations omitted).

The Agent's motion to compel the production of the documents cited several factual circumstances giving rise to an inference that the crime-fraud exception potentially is applicable. For instance, the Agent argued that there only was a brief interval between the amendments to the notes and the Special Master's recommendation that Mr. Winget be ordered to assign the notes over to the Agent and the fact that the amendments eliminated a demand feature despite testimony of JVIS's representative that this feature would not be of concern if Mr. Winget were the holder of the notes. ECF No. 139, PageID.1932. The Agent also explained why other innocent explanations for the Amendments should be discounted, indicating that JVIS had already defaulted on the loans so there was no need to prevent a default and JVIS did not amend other notes held by Winget-controlled entities despite being in default on those notes. These points are supported by

citations of information brought out during discovery, not simply allegations in the Agent's pleadings. *Id.* at PageID.1932-33.

These arguments adequately justified Judge Grand's determination that an *in camera* inspection was required to adjudicate the motion.

Next, the defendants maintain Judge Grand misinterpreted the evidence that he examined when determining that the documents should be reviewed *in camera* and that the exception applied. They criticize the magistrate judge's reasoning in the order for the *in camera* inspection as "based on a flatly (and admittedly) erroneous reading" of events in the 2008 action, "a misapplication of controlling authority, and a litany of improper adverse inferences against the *evidence* of JVIS-USA and Mr. Winget." ECF No. 257, PageID.3849. They take issue with the magistrate judge's reliance on Mr. Winget's alleged "concealment" of the amendments from the Agent; they maintain that Mr. Winget did not conceal the amendments because he turned the amendments to the escrow agent and had no discovery obligation to disclose them to the Agent. They also say Judge Grand failed to grapple adequately with evidence about the legitimate business purposes for the Amendments. Finally, they contend that he interpreted incorrectly the Sixth Circuit's 2022 opinion, *JPMorgan Chase Bank, N.A. v. Winget*, No. 21-1568, 2022 WL 2389287, (6th Cir. July 1, 2022), to the extent he relied on the court's statements or "findings" about Mr. Winget's intent. These points are interesting and perhaps, if plumbed in depth, could reveal that Judge Grand viewed incorrectly some aspects of the sprawling history of this case. But even if that were true, these reasons, considered together, do not suggest that Judge Grand clearly erred, either in determining that there was sufficient evidence to support an *in camera* review or in his ultimate ruling that the documents must be disclosed.

Even assuming that the magistrate judge somehow erred on all of these points, the defendants have not rebutted the extensive evidence remaining that the magistrate judge cited in support of his conclusion that *in camera* review was warranted.  He stated that the defendants' own privilege logs suggest that the amendments came about shortly after the Special Master's recommendation that they be disclosed to the Agent, ECF No. 234, PageID.3521, the fact that the amendments devalued the notes in the Agent's hands, *id.* at PageID.3522, JVIS Manager Timothy Bradley's deposition testimony that "with Mr. Winget holding the note there wasn't any concern" that he would demand immediate payment but that the story would be different if the Agent held the notes because it would have demanded immediate payment, *ibid.* (quoting ECF No. 139-9, PageID.1998), and the fact that JVIS had defaulted on other promissory notes issued to Winget-controlled entities but the notes at issue here were the only ones similarly amended, *id.* at PageID.3523.  These points, which are not now disputed, considered collectively, were sufficient for Judge Grand to have concluded that an *in camera* review was appropriate and are useful contextual factors that support an application of the crime-fraud exception, as explained further below.

Nor was Judge Grand's core holding that the crime-fraud exception applies clearly erroneous or contrary to law.  "In order for the crime-fraud exception to apply to the privilege[], the [challenging party] must show that there is a reasonable basis to (1) suspect the perpetration or attempted perpetration of a crime or fraud and (2) that the communications were in furtherance thereof. This showing must be made without reference to the allegedly privileged material." *Paasche*, 207 Mich. App. at 707, 525 N.W.2d at 918.  "The crime-fraud exception applies even where the attorney . . . is unaware that advice is sought in furtherance of the improper purpose." *Id.* at 708 n. 6, 525 N.W.2d at 918 n.6.

This is not to say that the plaintiff must show that Mr. Winget or JVIS-USA are fraudsters. The evidence presented to Judge Grand, and even the evidence developed at trial so far, suggests otherwise. But it has been held that a violation of the fraudulent or voidable transfer statute is sufficient to invoke the crime-fraud exception. *See Estate of Page v. Slagh*, No. 06-245, 2007 WL 1385957, at *2-3 (W.D. Mich. May 8, 2007). Michigan's fraudulent conveyance statute forbids debtors from making certain property transfers with "actual intent to hinder, delay, or defraud any creditor." Mich. Comp. Laws § 566.34(1)(a). "[A] plan or scheme to defeat the rights of creditors, actionable under the fraudulent conveyance laws, qualifies as a predicate for invading the privilege, at least where the claim is premised on an actual intent theory." *In re Rosich*, 561 B.R. 668, 670 (Bankr. W.D. Mich. 2016).

Also consider *Warner Norcross & Judd, L.L.P. v. Police & Fire Ret. Sys. of City of Detroit*, No. 300866, 2012 WL 593124 (Mich. Ct. App. Feb. 23, 2012). There, several plaintiffs appealed a trial court order that they contended did not require sufficient disclosures on the defendants' privilege logs to assess the claimed privilege. The court of appeals agreed, emphasizing that the log produced by the defendants was wholly insufficient to determine that the claimed privilege applied. *Id.* at *3. Notably, the court speculated that documents on the privilege log may be relevant because they could contain information about whether the defendants' attorneys "advised and assisted defendants in transferring all of the real and personal property related to the project . . . for nominal value in violation of the Uniform Fraudulent Transfer Act." *Id.* at *4. The defendants argued that because the UFTA does not necessarily require a showing of intent, the documents were not relevant to establishing the crime-fraud exception. The court rejected that position, stating that the party's purpose in making the communication is the relevant inquiry in determining the applicability of the exception." *Ibid.*

In this case, the documents likely do not establish a *fraudulent* intent, but it is sufficient under the statute for the transferor to possess an actual intent to hinder or delay his creditor. Mich. Comp. Laws § 566.34(1)(a). These purposes can be derived from the documents, which generally describe a plan to amend the notes out of a concern for the Agent's collection efforts by invoking JVIS's troubled business circumstances. To be sure, these business circumstances may have been real, and there may have been questions about JVIS's continued viability and ability to pay the notes. However, a review of the documents allows a competing inference that the defendants were motivated to act by the Agent's collection efforts, not with abstract concerns about business conditions. Extending the notes' maturity date under those circumstances could be seen as an action with an intent to hinder or delay a creditor.

The defendants also argue that Judge Grand erred by examining the privileged documents themselves in ascertaining whether the exception applies. Logic does not support that contention. If the magistrate judge could not consider the contents of the documents when making his ultimate determination, it is not clear why an *in camera* review would be a procedure approved by the Supreme Court at all. *Zolin*, 491 U.S. at 574-75 (explaining that an *in camera* review may "yield evidence that establishes the [crime-fraud] exception's applicability.")

The defendants cite *Stone Surgical, LLC v. Stryker Corp.*, but that case has little pertinence here. At most, it stands for the proposition that the *movant* may not rely on the privileged documents alone to prove fraud. *See* 858 F.3d 383, 392 (6th Cir. 2017) ("The law does not permit Ridgeway to rely on the emails themselves to prove the fraud."). It says nothing about the evidence a judge may use in making the ultimate determination that the exception applies, and its limitation makes sense in the context of that case because the documents at issue initially were produced inadvertently. *Id.* at 391.

The defendants' final objection is, in essence, that Judge Grand failed to make sufficiently individualized findings about each of the privileged documents, some of which, they maintain contain legal advice on topics other than the amendments to the notes. It is true that Judge Grand's order ultimately requiring production of the documents was terse, *see* ECF No. 250, but it does not follow that the explanation suggests that he did not conduct a detailed review. And the only case cited by the defendants for the principle that more is required is *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374 391-92 (W.D. Ky. 2007), a non-binding district court case where the level of specificity was not directly at issue. Even so, the defendants' concern that the concise nature of the opinion makes appellate review more challenging is vitiated by the Court's own review of the challenged documents.

And on that score, it is simple enough to conclude that Judge Grand was correct that exception was applicable here. In total, there are 40 allegedly privileged documents at issue: 19 produced by JVIS and 21 by Winget. However, it appears that all of JVIS's documents are duplicated on Mr. Winget's disclosures. Therefore, there really only are 21 total communications subject to a claim of privilege. The documents take the form of emails — largely between JVIS Manager Timothy Bradley and defense counsel — Bradley's handwritten notes of meetings with counsel, and legal memoranda prepared by defense counsel. All, generally, appear to describe the defendants' concern that the Agent might attempt to call the notes and resulting discussions about the possibility of amending their terms. Further detail is not necessary to Judge Grand's conclusions.

### III.

Magistrate Judge Grand concluded that the crime-fraud exception to the attorney-client privilege applies to the documents on the challenged portion of the privilege log. Judge Grand did

*not* conclude that either of the defendants committed fraud, or even that they acted to hinder the Agent's efforts to enforce the promissory notes at issue in this case. In fact, he took pains to disavow any such conclusion. But he did find that a reasonable person could infer that the documents betrayed an intent to hinder the creditor's access to a collectable asset. His decision to apply the crime-fraud exception and hold that the attorney-client privilege does not shield the documents from production was not clearly erroneous or contrary to law.

Accordingly, it is **ORDERED** that the defendants' objections (ECF No. 257) to the magistrate judge's order to produce documents (ECF No. 250) are **OVERRULED**, and the appeal is **DENIED**.

It is further **ORDERED** that the stay of the magistrate judge's order for production (ECF No. 254) is **DISSOLVED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: February 20, 2025